WM. D. MERRICK, *vs.* THE TRUSTEES OF THE BANK OF THE METROPOLIS.—*June,* 1849.

The stockholders of a bank, whose charter was about to expire, met and resolved to assign its assets to trustees, for the purpose of private banking, and instructed the president and directors to prepare and execute deeds to effect this object, and the *cashier* to endorse and transfer all the notes, &c , of the bank to such trustees. The president and directors accordingly conveyed the assets to the cashier, in trust, to convey them to themselves, as trustees, to be held for the uses expressed in the resolutions of the stock-holders, which was done. On the same day, being that preceding the expiration of the charter, the directors of the bank met, and, among other things, directed *J P V*, as president of the bank, to endorse all notes, &c., payable to the bank, which was done in the presence and with the assent of the cashier. They then adjourned *sine die*, and the corporation was dissolved. HELD :

That, by these proceedings, the directions of the stockholders were, in substance, complied with, and the assets properly transferred to the trustees,

who were, therefore, entitled to sue upon the notes due the bank, and thus endorsed by the president, and transferred to them.

A declaration set forth a note as payable to "*The Bank of the Metropolis.*" HELD: that this being enough to show that there is such a body politic, and to distinguish it from others, the corporation is well named.

The endorsee of a note may give it in evidence under the money counts.

The president and directors having, by the charter, full power to conduct the affairs of the bank, had the right to authorise the president to indorse its notes.

That the assent of a majority of the stockholders is the assent of all, is an implied stipulation in every compact of this sort.

The president and directors of a bank have the right to assign for the payment of debts, without the assent of any single stockholder.

The authority to endorse, conveys *per se*, the authority to *deliver;* the allegation of indorsement includes delivery, and when the former is proved, it is unnecessary to prove or aver the latter.

A contract that is illegal in itself, or that contemplates the violation of some statute, or is against public morals, cannot invoke the aid of a court of justice.

The provisions of the act of Congress, of 1817, against private banking in the *District of Columbia*, expired in 1836, together with the charters of the banks thereby incorporated.

Unless *mala fides* be proved or alleged, the court will not inquire into the *consideration* of an endorsement.

Though the evidence may show the contract to be joint and several, yet the court must look to the pleadings alone, and are confined to what they allege. It is only on the case made in the pleadings, that the plaintiff can recover.

When the contract is joint and several, the plaintiff must treat it as wholly joint, or wholly separate, and must sue all the parties together, or each by himself.

If one of several joint contractors be sued alone, he can only take advantage of it by plea in abatement. It is not matter in bar, or in arrest of judgment, or of variance in evidence on the trial.

But, if the declaration discloses that the promise is joint, it is necessary to aver that the other co-promissor is dead, or to account for his not being joined in the action, or it is bad upon demurrer, or writ of error.

The plaintiff is entitled to every intendment of law in support of the verdict. Everything that the defendant could object, will be presumed to have been made at the trial, and overruled.

Cured by verdict, means that the court will, after verdict, presume or intend that the particular thing required to sustain it, was proved at the trial. It may, therefore, be intended, in this case, that the death of the other co-promissor was proved to the jury.

Merrick *vs.* The Trustees of the Bank of the Metropolis.—1849.

The fact that two make a note, is a sufficient consideration for the promise of *one* to pay.

When the promise is laid in the declaration on motion in arrest, it will be presumed that an express promise, if requisite, has been proved. The plaintiff, in such case, is not required to stand upon his proof, but invokes to his aid the intendment of the law.

The existence of a legal liability by the defendant, is a sufficient basis for an express promise to be intended after verdict, and the promise of one, on the antecedent liability of both, is also sufficient.

If the declaration alleges that two jointly made a note, and jointly promised to pay, after verdict against one sued separately, it will be presumed that they jointly and severally promised. Both may have promised separately in the note, and the one separately afterwards.

Appeal from *Charles* county court.

This was an action of assumpsit, instituted by *John P. Vanness, John Boyle,* and others, the appellees, trustees of the *Bank of the Metropolis,* against the appellant, upon the promissory note recited in the opinion of this court.

The declaration contains four counts. The 1st avers, "that whereas the said defendant and a certain *James W. McCulloh,* heretofore, to wit: on the 30th of October, 1843, at," &c., "made their certain promissory note in writing, bearing date the day and year aforesaid, and thereby then and there promised to pay, four months after the date thereof, to the *Bank of the Metropolis,* or order, $1,200, and then and there delivered the said note," &c., "and the said *Bank of the Metropolis,* to whom," &c., "by *John P. Vanness,* the president of said bank, who was authorised by the charter and by-laws of said bank, and was accustomed to make such endorsements, endorsed the said note; by which said endorsement the said *Bank of the Metropolis* then and there ordered and appointed the said sum of money," &c., "to be paid to the plaintiffs, by means whereof, and by force of the statute," &c., "the defendant became liable," &c., "and being so liable, the said defendant undertook and promised to pay the plaintiffs said note."

*2nd Count.* "Whereas the said defendant and *McCulloh* made," &c., (reciting the place and date of the note, as in 1st count,) "and thereby jointly and severally promised to pay,"

&c., (stating amount and delivery of the note,) "and the said bank to whom the said note was to be paid." "On the 3rd of July, 1844, at," &c., "by their certain deed of trust and assignment in writing, *bona fide* assigned all and singular the bonds, bills, notes," &c., "due and belonging to said bank, to a certain *Richard Smith*, and then and there delivered the same to said *Smith*." And the plaintiffs aver "that this note was one of the notes so assigned and delivered to *Smith*." "And the said *Smith*, to whom the said promissory note was so assigned, *bona fide*, by his deed of trust and assignment in writing, on the day," &c., "at," &c., "assigned the said note to the plaintiffs, and then and there delivered the same, so assigned to them." "By reason whereof, and by force of the statute," &c., (*stating liability* and promise, as in 1st count.)

The *3rd Count*, simply charges, that the defendants was indebted to the plaintiffs in the sum of $1,200, for money lent and advanced, and paid, laid out and expended, and for money had and received.

The *4th Count*, states, that whereas the defendant and said *McCulloh* were indebted, jointly and severally, to the *Bank of the Metropolis*, in the sum of $1,200, payable four months after date, to said bank, or its order, for money by said bank lent and advanced to, paid, laid out and expended for them, and for money by them had and received; and being so indebted, they severally undertook and promised to pay said bank the said sum of money. And the said bank, by *John P. Vanness*, its president, who was authorised by the charter and by-laws of said bank, and was accustomed to transfer, by endorsement, such debts and promises, &c., did, by endorsement, transfer said debts and promises to the plaintiffs, by means whereof, and by force of the statute, &c., the defendant become liable, and promised to pay said sums to the plaintiffs.

The defendant pleaded *non assumpsit*.

1st Exception. The plaintiffs, to support the issues on their part, offered the note referred to in evidence, subject to all legal exceptions, and proved the signatures of the makers and

of the endorser. They then offered the evidence which is sufficiently stated in the opinion of this court. Upon this evidence the defendant offered the following prayers:

1st. That the promissory note, signed by defendant and *James W. McCulloh* is not competent evidence for the consideration of the jury.

2nd. That the plaintiffs cannot recover, because there is no evidence of the transfer of said note to them.

3rd. That they cannot recover, because the endorsement of said note by *John P. Vanness*, as president, is not proved to to have been authorised by the *Bank of the Metropolis*, the payee.

4th. That they are not entitled to recover, because there is no evidence of the authority of said *Vanness* to deliver said note to them.

5th. That if the jury find, from the evidence, that said note was delivered by said *Vanness* to the plaintiffs, for the purpose of passing the same from the possession of the *Bank of the Metropolis*, then they cannot recover, if the jury shall further find that the plaintiff, or some of them, received the same with full knowledge of the proceedings and resolutions of the stock-holders of said bank, and the orders and proceedings of the president and directors of said bank read in evidence.

6th. That if the jury find, from the evidence, that there was no authority conferred by said bank upon said *Vanness*, to deliver said note to the plaintiffs, then they cannot recover, if the jury further find that they received said note from said *Vanness*, and at the time of receiving the same, they, or some of them, were aware of such want of authority.

7th. That if the jury find, from the evidence, that said note was not passed to the plaintiffs for a valuable consideration, then they cannot recover, unless the jury further find that the same was delivered by *Richard Smith* to the plaintiffs.

8th. That by the proceedings and resolutions of the stock-holders, and the proceedings and orders of the directors, as recited in the deed read in evidence, there was no authority to said *Vanness* to deliver the note in suit to the plaintiffs.

9th. That if the jury find, from the evidence, that said note was endorsed and delivered to plaintiffs, for the purposes and uses set forth in the resolutions of the stockholders of the *Bank of the Metropolis*, as read in evidence, then such endorsement and delivery were null and void, according to the true.intent and meaning of the acts of Congress, read in evidence to the jury; provided the jury further find, that the design of such endorsement and delivery was to enable the plaintiffs, as individuals, with the proceeds of said note and other assets of said bank, to carry on, in the *District of Columbia*, the business of private banking.

But the court (MAGRUDER, C. J.,) refused to grant said prayers, or any of them, and the defendant excepted.

2ND EXCEPTION. The defendant further prayed the court to instruct the jury, that upon the evidence in the cause, if believed by them, the plaintiffs were not entitled to recover upon the 2nd, 3rd, and 4th counts of the declaration, which prayer the court granted, and so instructed the jury. To which instruction the plaintiffs excepted.

The verdict was for the plaintiffs on the first count, whereupon the defendant moved in arrest of judgment, because said count was wholly insufficient and defective. But the court overruled the motion, and rendered judgment for the plaintiffs, and defendant appealed.

The cause was argued before DORSEY, C. J., CHAMBERS, MARTIN and FRICK, J.

By R. T. MERRICK and BRENT, for the appellant, and By WM. SCHLEY and F. F. BROWN, for the appellees.

FRICK, J., delivered the opinion of this court.

The claim of the plaintiffs (the present appellees,) has its origin in a note discounted at the *Bank of the Metropolis*, in the *District of Columbia*, of the following tenor:

"$1,200.                    *Washington*, 30th October, 1843.

Four months after date, we jointly and severally promise to

pay to the *Bank of the Metropolis*, or order, twelve hundred dollars, for value received. JAMES W. McCULLOH,

WM. D. MERRICK."

On the back of the note is the following endorsement:

"Pay to *John P. Vanness, John Boyle, Thomas Carbery, Nathaniel P. Causin, George W. Graham, Charles Hill, Lewis Johnson, John W. Maury, George Parker,* and *James Thompson,* trustees of the *Bank of the Metropolis,* or their order. JOHN P. VANNESS, Pres't."

At maturity the said note was not paid, and remained a part of the assets of the Bank on the 3rd of July, 1844, when the charter was about to expire. In anticipation of this event, the stockholders had assembled to deliberate upon the further disposition of the assets of the bank, and the requisite representation in number and amount of shares, and more than a majority of the shares of stock, being present, to provide for the existing state of affairs, they resolved: "That the entire property and assets of the bank should be assigned and conveyed over to trustees;" and after providing for the payment of the debts, deposits and circulation of the bank, further resolved, "that the president and directors be instructed to cause to be prepared and executed such deeds as may be best adapted, in their judgment, to secure the objects of their meeting; and after providing for the fulfilment of all the obligations of the bank, to manage and conduct the affairs and property in their hands, as will most nearly correspond with the present and past business of the institution." And further, "that when the trustees shall be appointed as aforesaid, the *cashier* be, and he is directed and empowered to assign, transfer and endorse to them all notes, bills, and other evidences of debt, and all other personal property, &c., belonging to the bank, which may require to be thus transferred."

It having been determined that the president and directors of the bank should be constituted the future trustees, it was deemed advisable thus, in the first instance, to convey to an intermediate agent, and *Richard Smith,* the cashier of the bank, was selected, to whom the president and directors were

9    v.8

required to execute the deed of assignment; and *Smith* was, thereupon, to re-convey to the individuals who constituted the then president and directors of the institution, as trustees, and by them the business of the institution was to be thenceforth conducted, under the designation of " Trustees of the *Bank of the Metropolis*." In pursuance of these resolutions of the stockholders, the deed of assignment reciting all these proceedings, was executed to *Smith*, of all the estate of the bank, bills, bonds, notes, &c., in trust, that he should assign and transfer the estate, and all the property, right, claim and demand conveyed to him by the deed, to the present plaintiffs, as the trustees selected by the stockholders, for the uses and purposes expressed in the resolutions adopted by them at their general meeting. And in conformity with this arrangement, *Richard Smith*, on the same day, (the 3rd of July, 1844,) reconveyed and assigned to these trustees all the property and estate so conveyed to him, to be held by them for the uses and purposes expressed in the resolutions of the stockholders, and the deed of trust executed to him by their directions.

On the same day the board of directors of the bank met, and it was then ordered, "that all the stocks standing in the name of the bank, or of *Richard Smith*, cashier, hypothecated to the bank, should be transferred to *Richard Smith*; that the funds of the bank, when counted and delivered up by the cashier to the trustees, should again be placed in the hands of *Richard Smith*, as cashier of the new concern; and further, that all notes payable to the president and directors of the bank, be endorsed by *General Vanness*, as president of the bank, and the seal of the bank affixed, when necessary."

This note, among others, was so endorsed by *John P. Vanness*, president. And it was proved, by *John D. James*, a competent witness, that the president was, at that time, accustomed to make such endorsements when required, or during the absence of the cashier; while *Smith*, in his testimony, says it was not customary for the president to endorse notes held by the bank, unless, from the absence of the cashier, it became necessary; but, that at the time alluded to, he endorsed

all the notes held by the bank, which were made payable to the bank.

The plaintiffs further proved, that the amount specified in the note was loaned to the said *McCulloh* upon the security of said note, and also proved the handwriting of both to the note, that defendant admitted his liability, and promised to make *McCulloh* pay it.

Upon these facts, nine prayers were submitted by defendant for the instruction of the court, all of which were rejected, and it becomes our duty now briefly to examine them.

The first in order proposed was, that the promissory note, signed by *McCulloh* and the defendant, is not competent evidence for the consideration of the jury. The prayer does not advise the court of the precise objection to the note which is relied on. In one view it may be predicated upon the proposition so much relied upon throughout the case, that there was no authority in the president of the bank to endorse the note, and, consequently, no title passed by it to the plaintiff, and that, in this point of view, it was not admissible to go to the jury. As this same objection runs through the whole of the subsequent prayers, presented in a variety of aspects, and more distinctly announced, we shall defer the examination of it until we come to discuss them hereafter. In support of the prayer, it has been urged, that the declaration sets forth the note as made to the *"Bank of the Metropolis,"* and that there is no evidence of the existence of such a bank. The 24th section of the act of Congress of 1817, ch. 93, it is said, enacts that "all those persons who have heretofore subscribed certain articles of limited partnership, under the name and style of 'the president and directors of the *Bank of the Metropolis,*' be and are hereby incorporated." The act does not say incorporated by that name. On the contrary, the same section continues: "The said '*Bank of the Metropolis,*' *and* the president and directors, shall be subject to the like rules and regulations," &c.; dropping the style of the president and directors, and simply designating its true corporate name to be the *"Bank of the Metropolis."* The act of Congress has thus given sanction to the name

under which this note was framed, and there was no necessity (as contended for,) to supply any deficiency by suitable averments in the declaration. But were it otherwise, the case of the *Hagerstown Road Company vs. Creager*, 5 *H. & J.*, 124, rejects this strictness in pleading, and decides, that if there is enough said in the contract to show that there is such a body politic, and to distinguish it from others, the corporation is well named. Besides, this objection is further obviated by the 3rd count, where the parties are introduced as "the president and directors of the bank," &c. The prayer admits the making of the note, and even on the 1st count, excluding all the others, it was pertinent to the issue, and, therefore, admissible. The allegation is, that the two parties had made their promissory note to the bank, and the very note, so made, is offered in evidence. On the 2nd and 3rd counts, which proceeds on the basis of the assignment by the bank to the plaintiffs, it is clearly admissible. On the authority of *Penn vs. Flack*, 3 *G. & J.*, 369, the endorsee of a note may give it in evidence on the money counts, and apart from other considerations, it is clearly a case in which the plaintiff might recover on these counts.

The 2nd and 3rd prayers assert the proposition that there is no evidence of the transfer of this note to the plaintiffs, and that they cannot recover, because the endorsement by *Vanness*, as president, is not proved to have been authorised by the bank. Not that there was no transfer in point of fact, but that there was no right to transfer by the president. It is maintained that the president *ex officio* had no power to endorse the notes of the bank. This may, or may not be so, according to the particular state of facts presented. Ordinarily the cashier, as the agent and servant of the president and directors, has this power conferred on him. But, in the present instance, the board of directors *instructed* the president to endorse all the notes, and this note, among others, was so endorsed by him. So far the act was fully authorised; the president and directors, by the 4th and 6th sections of the act, having full power to conduct the affairs of the bank, and to make all such rules, regulations and orders for the government of the bank, from time to time, as

they may deem expedient. The power which the cashier has to endorse the notes, is derived from the same source, and that power, for any specific purpose, may at any time be revoked by the board, and conferred upon another, as was the case in this instance.

But it is asserted, that with a view to the expiration of the charter of the bank, and with intent to pass the property of the bank to these plaintiffs, the stockholders, at a previous meeting, had empowered and instructed the cashier to endorse these notes, and that, consequently, the order of the board of directors was in conflict with this power conferred on *Smith.* In other words, that the resolution of the stockholders was paramount, and obligatory on the president and directors of the bank.

Let us briefly examine the condition of affairs when these proceedings were had, and no difficulty exists in reconciling this apparent conflict of authority. The charter was about to expire on the 4th of July. Congress had adjourned without providing for any extension. The stockholders were, therefore, convened, and engaged in measures to liquidate the concerns of the corporation, and devote the property and capital of the bank, thereafter, to private banking, under the administration of trustees, without violating or conflicting with the presumed object of Congress, in declining an extension of their charter. The president and directors were selected as the trustees. They could not execute an assignment to themselves, and *Richard Smith*, the cashier, was selected as the agent and conduit, through whom the property and effects of the old were to pass to the trustees of the new institution. That the majority there assembled had a right so to direct and dispose of the concern, is not to be questioned. *Angel and Ames on Corporations,* 459. That the assent of a majority is the assent of all, is an implied stipulation in every compact of this sort. See, also, *Union Bank of Tennessee, vs. Ellicott and others,* 6 *G. & J.,* 363. Where the right is recognised of the president and directors to assign for the payment of debts; without the assent even

any single stockholder.   See, further, 17*th section of the charter, act of Congress*, 1817.

By the 5th resolution of these stockholders, the cashier was directed and empowered to assign, transfer and endorse all bills, notes and other evidences of debt.   The deeds of transfer of all the property and effects of the bank, were to be prepared and executed by the president and directors.   On the 3rd of July, these deeds were submitted and executed, and the order passed by the board of directors, that the president should endorse all the notes, which was done in the presence of *Smith*, the cashier, with his consent and concurrence, of course, and the note here in question, with all the others so endorsed, passed into the hands of the trustees, the present plaintiffs.   The board of directors then adjourned *sine die*, and the corporation was dissolved.

Were not all things here complied with, which the stockholders contemplated?   All these prescribed forms, by transfer, endorsement and delivery of the effects of the corporation, were designed to concenter in one body, in whom the future title was to vest.   How could it be material through what form it reached them?   The mode designated by the stockholders, was but a form adopted by them, but by no means obligatory on the directors, in whom the authority to administer the affairs of the bank, still remained on the 3rd of July.   They fully complied with the substance by executing the purpose of the stockholders, although through another agent.   And if the object of the trust, and its purposes, were attained, if its conditions were satisfied fully, in the absence of *mala fides* on the part of the directors, the objection seems, to this court, one of form alone, and not material.

These prayers assume, moreover, that the stockholders had a right to control the legitimate functions of the board of directors, and to annul the powers granted to them by the charter. In one sense, they are the agents of the stockholders, but with all the power conferred on them by the charter, during the period for which they are elected.   The rights of both principal and agent exist in virtue of the same law.   The powers of

each are defined by the law; and that the directors had authority themselves to direct the form of this transfer, is evident from the gift of power conferred by the 6th section of the charter. See, also, *Angel and Ames*, 293, 294. But we cannot construe the resolution of the stockholders, even if paramount, to be mandatory on the directors, and the object of both principal and agent to give vitality to a new institution being attained, we think that thus far the objection to the means and the medium of its accomplishment is not sustained.

This view disposes not only of the 2nd and 3rd prayers, but also of the 4th and 8th. The authority to endorse, conveys *per se* the authority *to deliver*, and by showing the authority to endorse, disputed by the 2nd and 3rd, we also establish the delivery denied in the 4th and 8th. The allegation of the endorsement includes delivery. *Chitty on Bills*, 251, 252. An endorsement with intent to pass, even though the bill be left with the endorser, imports a transfer. And where the endorsement is proved, it is unnecessary to prove or aver delivery. 1 *Gill*, 45, *Buckmeyer and Whiteford*, where the holder brings suit, and may recover, unless *mala fides* be proved. 7 *Term R.*, 596. 5 *East.*, 476. *Chitty on Bills*, 322.

But we are told, that this whole transaction being in contravention of law, and its purpose unauthorised and illegal, all the proceedings of these parties under it are void, and the endorsement and transfer can have no legal validity. That the stipulated purpose of this trust was to enable the parties, with the proceeds of this note, and the other assets of the bank, to carry on *private banking* in the *District of Columbia*, contrary to the provisions in the same act of Congress by which the charter is conferred, and this objection is the basis of the 5th and 9th prayers.

The 29th section of the act is to this purport: "That after the 4th of April ensuing, it shall not be lawful for any unchartered banking company, or any association, partnership or company of individuals within the *District*, to discount any notes for the payment of money, or to issue bills, &c., and the violation of the law shall be held to be a misdemeanor," &c. And

the 30th and 31st sections inflict the penalty upon the officer or agent of any such associations who sign the bills and notes, and declares the bills so discounted null and void.

It is not to be denied that this provision presents, at first view, a formidable objection to the whole *res gesta* under considera- tion. A contract illegal in itself, or that contemplates the vio- lation of some statute, or is against public morals, cannot invoke the aid of a court of justice; for the court will not contribute the means of infringing the law. The *mala fides* of the trans- action is thus let in, and the authority to transfer and endorse, if the alleged purpose is in violation of law, may justly be questioned. But this objection is here relieved by the fact that the prohibition is no longer in existence. Together with the banks incorporated by the act, the provision expired. The act of Congress, of 1817, under which the *Bank of the Metropolis* holds its charter, and which contains this prohibition, was to continue until the 1st of January, 1822. By a further act of the 2nd of March, 1821, it is provided that the acts incorpo- rating the several banks of the *District of Columbia* (i. e., the acts of 1817,) be and the same are hereby *extended* and *limited* to the 3rd day of March, 1836. It has been strenuously urged that these provisions against private banking, did not fall with the other provisions of the act. But it must be intended here, that the act of 1821, which *extends* the whole, and keeps it in force until 1836, must be designed to *limit* the whole to that period, unless something to the contrary is expressed or appears. It might readily be shown that the acts which called into exis- tence these corporations, were intended to place restrictions upon the private banking practised to excess and ruin at that period, and was further intended to protect the operations of these chartered banks. And it might also be safely assumed, that when Congress suffered these corporations afterwards to expire by their own limitation, they did not design that the *District of Columbia* should be excluded and prohibited from all banking operations, private or corporate. But whether this be so or not, as we conceive and construe these acts, the pro- hibitions they contain must be considered parts of the acts, and

both fall together. At the same time it is conceded there is no other action of Congress on the subject; at least none has been referred to as reaching these plaintiffs. And in this view, the 5th and 9th prayers were properly rejected, and may be said to dispose of the whole case made upon the prayers. It establishes the legality of the endorsement, and the purpose for which it was made. For that purpose, the endorsement of the president was as efficacious as the cashier's, the whole proceeding having the express sanction of *Smith*, by his presence and co-operation.

We have already shown that the right to endorse imports the right to deliver. The actual delivery of the note, and its possession by the present plaintiffs, is conceded. The 6th prayer proceeds upon the ground, that nothing passed by the delivery, if there was no authority to endorse, *and the plaintiffs were aware of it.* From what has been said, it follows that this prayer was also properly rejected.

The 7th, and only remaining prayer to be disposed of, impeaches the consideration of this endorsement, which we have shown was legally made, and upon sufficient authority. It resolves itself properly in the 5th and 9th. Unless *mala fides* be proved or alleged, the court will not enquire into the *consideration* of the endorsement. 1 *Gill,* 45. The *mala fides* has not been proved; and that alleged has been sufficiently answered. The transfer was made to the plaintiffs, with other funds of the bank, to liquidate the debts and affairs of the corporation, and the whole character of the trust to plaintiffs shows abundant consideration for the transfer.

We leave out of view that some of these prayers propose to submit to the jury this question of authority, which, upon the deeds and other written proceedings, was exclusively for the court, as upon other grounds we sustain the county court in rejecting the whole series of prayers offered on the part of the defendant.

2ND EXCEPTION. After the court below had refused to grant these prayers, the defendant further prayed the court to instruct the jury, that upon the evidence in the cause, if believed by

them, the plaintiffs were not entitled to recover on the 2nd, 3rd and 4th counts in the declaration, which prayer the court granted, and so instructed the jury.   And the verdict having been rendered against the defendant on the 1st count, his counsel moved in arrest of judgment, because: the declaration discloses a *joint* promise on the part of the defendant and another, and, therefore, judgment ought not to be rendered against this defendant alone.   But the court overruled the motion, and we are now to enquire, whether the 1st count is good and sufficient, more especially after verdict.

Does the declaration here disclose a *joint* contract?   The averment is, that whereas the defendant and a certain *James W. McCulloh* made their certain promissory note in writing, and promised to pay, and that the *Bank of the Metropolis*, to whom it was made payable by its president, endorsed the same to the plaintiffs, by means whereof the *defendant* became liable, and promised to pay according to the tenor and effect of said note.   *Dehors* the nar, and the pleadings the note here produced in evidence, is joint and several.   But the court must look to the pleadings alone, and are confined to what they allege.   It is only on the case made in the pleadings that the plaintiff can recover.   "When the contract is joint and several, the plaintiff must treat it as wholly joint or wholly separate, and must sue all the parties together, or each by himself."   1 *Chitty's Pl.*, 43, 44.   *Addison*, 880.   "Each party on a *joint* contract may be severally liable in one sense, that is, if sued separately, and he does not plead in abatement, he may become liable for the whole debt."   *Same*, 875.   "Where the one has been thus seperately sued, advantage can only be had of it by plea in abatement."   3 *H. & J.*, 572, *Brown vs. Warram.*   "It is not matter in bar or in arrest of judgment, upon the finding of the jury, or of variance in evidence on the trial."   10 *Peters*, 300, *Gilman vs. Rives.*   43 *L. Lib.*, 391, *Rice vs. State.*   But if the declaration discloses (as is here contended,) that the promise is joint, it is necessary to aver that the other is dead, or to account for his not being

joined in the action, or it is bad upon demurrer or writ of error. 43 *L. Lib., loco cit.* 5 *Greenleaf*, 443.

We must observe that the objection here is not upon demurrer, but upon motion in arrest of judgment, on the alleged insufficiency of the 1st count to support the action, and the plaintiffs are entitled to every intendment of law in support of the verdict. Everything that the defendant could object, will be presumed to have been made at the trial, and it must be intended that they have been there made and overruled. "Where the statement in the pleadings is imperfect and insufficient, but of such a character as to lead the court to believe that all must have been proved on the trial which should have been stated in the pleading, to have justified the jury in finding the verdict, the defective pleading is aided by intendment after the verdict." 2 *Gilman*, 307. It may, therefore, be intended that the proof was before the jury of the death of the other co-promissor, and the verdict then stands unimpeachable on that ground of objection.

If this proof was necessary to enable the plaintiffs to recover, and without which it is presumed that the verdict would not be given, it will be intended that it was done. "Cured by verdict means, that the court will, after verdict, presume or intend that the particular thing required to sustain it, was proved at the trial." *Chitty's Pl.*, 673. "After verdict, a defective allegation in the declaration cannot be taken advantage of, though it might furnish good cause of demurrer." *Vandersmith vs. Washmein*, 1 *H. & G.*, 4. "Whatever might have been relied on to defeat the action, must be intended to have been proved at trial after verdict." 7 *Smedes and Marsh*, 49. 8 *Sm. and Marsh*, 562. 2 *Gilman*, 307. Here it is averred that the defendant promised to pay according to the tenor and effect of the note; and it is further objected that there is no consideration here shown for the one to pay. Is not the fact that two made a note, a sufficient consideration for the promise of *one* to pay? Each is liable for the whole, at the selection of the plaintiff. If an express promise be necessary, the law will intend the promise. Even where the express promise is

necessary to support the action, the declaration never avers it to be an *express* promise, but only the mere promise to pay. And on motion in arrest, it will be intended that the express promise was proved. "When the promise is laid in the declaration, on motion in arrest, it will be presumed that an express promise (if requisite,) has been proved." 43 *Eng. C. L.*, 823. 2 *McLean*, 363. 61 *L. Lib.*, 310, *Biles on Bills. Cowp.* 132. The plaintiff, in such case, is not required to stand upon his proof, but invokes to his aid the intendment of law, that there was an express promise, and that it has been proved. The existence of a legal liability by the defendant, is a sufficient basis for an express promise to be intended after verdict; and the promise of one, upon the antecedent liability of both, is sufficient.

This is supposing the declaration to be defective, where the law will intend every thing necessary to support it, after verdict. But it does not appear upon the record, that *McCulloh* was *jointly* bound with the defendant, and it is questionable whether the declaration would be bad on demurrer. The allegation is, "that the two made a certain promissory note," not necessarily a *joint* note. And even if so, the verdict will intend that it was both joint and several. The objection is, that they jointly made the note, and jointly promised to pay. But after the verdict, we must presume that they jointly and severally promised. Both may have promised in the note, and the defendant may have promised separately afterwards; and thus the verdict and the pleadings are rendered consistent. At all events, the express promise is intended, and presumed, after verdict, to have been proved; and the court below were correct in their refusal to arrest the judgment.

JUDGMENT AFFIRMED.