## CIRCUIT COURT OF BALTIMORE CITY

Filed June 19, 1893.

### HOFMAN ET. AL.
### VS.
### MEAD ET. AL.

*Moses R. Walter* for plaintiffs.

*Frank Woods, C. J. Bonaparte* and *Paul M. Burnett* for defendants.

DENNIS, J.—

The directors of a solvent corporation are the agents of the stockholders to conduct its business, and as such agents they are authorized to sell any portion of its property which, in their judgment, it may be to the interest of the corporation to sell, provided that by so doing they do not prevent its continuing to transact the business which it was formed to carry on, and thus defeat its corporate purposes. Hence, it is clear they would have no right to sell *all* the property of the corporation, including—as in this case—the patent rights under which the business was conducted, without the consent of the stockholders, for this would be to enable these agents to kill the business and work a dissolution of a corporation against the consent of their principals, and in defeat of the very purpose for which they were appointed.

But, when the corporation is insolvent, a different principle prevails. In such case, the directors become by operation of law, *trustees for the creditors of* the corporation, and their primary obligation is to them; and accordingly it is held, they have the right to dispose of *all* the property of a corporation, without the assent even of a single stockholder.

Beach on Corporations, Sec. 387; Merrick vs. Bank, 8 Gill 69; Bk. vs. Ruff, 7 G. & J. 448; Beach vs. Miller, 130 Ill. 162; Lippincott vs. Shaw, 25 Fed. Rep. 586.

It is true that in the Maryland cases where this doctrine has been announced, and in many of the cases cited by Beach, the conveyance was to a trustee for the benefit of creditors.

But, if it be the duty of the directors of an insolvent corporation to pay its debts, and they have the right therefore, without the consent of the stockholders, to make a deed of all its property to a trustee in order to accomplish this end, it is difficult to see why upon principle, they have not the right to do directly themselves, by a sale by them of all the property of a corporation, what they are allowed to do indirectly by conveying the property to a trustee for precisely the same purpose, viz: to convert all the property of the corporation into cash for the purpose of distribution among creditors. And the authorities seem to authorize such action.

Crescent City Co. vs. Flauner, 14 La. Ann.; White Co. vs. Pettes Co., 30 Fed. Rep. 864; Beach on Corporations, Sec. 387.

Of course, a sale by the directors under such circumstances must have been made *bona fide* without collusion, and with a due regard to the interest of the company.

In this case, no evidence has been offered to show fraud on the part of the directors in making the sale; or that there was any collusion between them, or any of them, and the purchaser and it was not even contended in argument that the property did not sell for its full market value.

It seems to me idle to contend that the corporation was not insolvent. It had come absolutely to a standstill in its operations. It had less than fifty dollars cash on hand, and about the same amount on deposit with Nicholsons, who had failed; and it was wholly unable through lack of funds to take any steps even to complete the orders on hand. The mortgage upon its entire property was about to mature; and there was no sign of relief visible in any direction. There was, it is true, some testimony that certain of the stockholders would put up money to reorganize the company; but the suggestion was at the best most vague, and was moreover based upon the condition that the president of the company, who also controlled a majority

of the stock, should retire and give up the management to the minority stockholders—a condition which they had no right to impose and to which it was idle to suppose he would submit.

It seems to me unnecessary to consider the causes which brought about this unfortunate state of affairs.

Whether it was due to the inefficiency and unsaleability of the filters themselves, or to the lack of harmony in the management—growing out of the continued quarrels and bickerings between the president of the company and the minority stockholders (and about which as much can be said in favor of one side as the other) is immaterial. The result was that the company was brought to a state of absolute insolvency; and nothing was left to be done except to sell its property and pay its debts. This the directors did; the sale was a fair one, and so far as the testimony shows, realized the full value of the property; and under these circumstances, I think the rights of Mead, as a bona fide purchaser for value must be respected.