## SCHWARTZ *v.* REESCH.

HUSBAND AND WIFE; FEME SOLE TRADER; PRACTICE; MOTION IN ARREST OF JUDGMENT.

1. If a husband deserts and abandons his wife by a continued absence, with no intention of resuming the marital relations, and contributes nothing to her support, she may trade and sue and be sued as a *feme sole*, and the period of desertion is important only as it may indicate the husband's intention to make his desertion permanent or otherwise.

2. Whether or not a husband by his absence intends to wilfully desert and abandon his wife, and if he does, whether or not he intends that his personal property left with her is to be used and disposed of by her as a means of support of herself and family, are questions for the jury in a suit by the wife in which the issue is the right of the wife to sue without the joinder of her husband.

3. Upon a motion in arrest of judgment the successful party is entitled to every intendment of law that can be reasonably made in support of the verdict; and it will be presumed on appeal that every objection that could have been made was made and urged and was overruled.

No. 194.   Submitted January 12, 1894.—Decided February 21, 1894.

HEARING on an appeal by the defendant from an order of the Supreme Court of the District of Columbia, holding a law term, overruling a motion in arrest of judgment in an action of *assumpsit*. *Affirmed.*

The COURT in its opinion stated the case as follows:

The plaintiff, Boldina C. Reesch, sued the defendant, August Schwartz, in *assumpsit* for goods sold and delivered, and the good will of a business; for work and materials

furnished; and for money due the plaintiff on account stated between the plaintiff and defendant. The amount claimed, according to the bill of particulars and the affidavit filed with the declaration under the rule of court, is $305.

The defendant pleaded: 1st. Not indebted as alleged; 2d. Did not promise as alleged; and, 3d. That the plaintiff, at the commencement of the suit, was and still is, a married woman, the wife of one Carl Reesch, who is still living, and that the cause of action is not a matter having relation to the sole and separate property of the plaintiff.

To the first two pleas the plaintiff joined issue, and to the third she replied:

That at the commencement of the suit she was and still is married to Carl Reesch, but her husband, on or about the 24th day of October, 1886, "whilst resident with the plaintiff in this District, wilfully deserted and abandoned the plaintiff, and has continued such abandonment and desertion of the plaintiff," and that she does not know where he is; "nor has he in any way contributed to the support of the plaintiff, but she was compelled to and did support herself by her own exertions, by means of carrying on a business as a *feme sole* trader, partly with property belonging to her husband at the time of the desertion (which property was exempt from execution or attachment at law) and partly with property acquired by her own exertions since said desertion. And she avers that subsequently, to wit, on or about the 2d of July, 1888, she sold and disposed of the property so acquired to the defendant, and that the amount sued for is the balance of the purchase money due thereon.

The defendant demurred to this special replication; but the demurrer was overruled; and thereupon the defendant joined issue upon the allegations of the replication to the defendant's third plea. This, of course, was a waiver of the demurrer.

The parties proceeded to trial, and in the course of which a bill of exceptions was taken by the defendant, to certain rulings upon questions of evidence, and to rulings upon

prayers offered by the defendant for instruction to the jury, and the instructions given by the court; and the result of the trial was a verdict and judgment for the plaintiff. The questions, however, raised upon these exceptions are not now before this court. The defendant moved in arrest of judgment, which motion was overruled, and that motion presents the only question, by concession of the parties, that we are called upon to decide.

*Messrs. Shepperd & Lavender* for the appellant:

In the case of *Musick* v. *Dodson*, 76 Mo., 624, the court held that "the abandonment of a married woman by her husband for a period of time sufficient to entitle her to a divorce (3 years), does not remove her disability to contract, unless he has gone beyond the limits of the State." This rule would apply in this case, even if the rule were narrowed to this extent, it not appearing from the pleadings that the husband, Carl Reesch, had left this jurisdiction. In *Tucker* v. *Scott*, 3 N. J. L., 510, the court held that a "*feme covert* may not sue in her own name." The rule is better stated, however, in the opinion of the court in *Howland* v. *Fort Edward Paper Mill Co.*, 8 How. Pr., 505: "In no case at law could the wife sue alone unless her husband was civilly dead or banished, or there had been a divorce." *Cardell* v. *Shaw*, 4 T. R., 361 ; *Marshall* v. *Rutton*, 8 Id., 545; *Beard* v. *Webb*, 2 B. & P., 93; 1 Chitty's Pl., 18; *Boggett* v. *Frier*, 11 East., 301 ; *Chambers* v. *Donaldson*, 9 Id., 471 ; *Byrne* v. *Van Holsen*, 5 J. R., 66 ; *Johnson* v. *Parmeley*, 17 J. R., 271 ; *People* v. *Webster*, 10 Wend., 554 ; 1 Ed. N. P., 229; 1 Burr Pr., 61; Story Eq. Pl., 62. This rule seems to have been inflexible, whatever was the nature of the interest of the wife, for at common law she had no separate property. *Coomes* v. *Elling*, 3 Atk., 679; Clancy, 251; 2 Story's Eq., Sec. 1378. And no general creditors. *Marshall* v. *Rutton*, *supra*; 2 Story's Eq., Sec. 1397; *Rodgers* v. *Ludlow*, 3 Sandf. C. R., 104; *Lewis* v. *Lee*, 3 B. & C., 291; *Gardner* v. *Gardner*, 22 Wend., 528 ; *Lovett* v. *Robinson*, 7 How. Pr.

R., 205; *Noyes* v. *Blakeman,* 3 Sandf., 531. Among some of the cases decided in our court, recognizing these general principles of the common law as to the status of a married woman, and reaffirming them, may be cited *Keizer* v. *Hitz,* 2 Mackey, 273; *Harriman* v. *Garland,* 1 Mackey, 1; *Schneider* v. *Garland,* 1 Mackey, 359. In *Hitchcock* v. *Richold,* 5 Mackey, 421, it was held that a married woman cannot contract as a sole trader. See also *McDermott* v. *Garland,* 1 Mackey, 496; 3 MacArthur, 541, and *Offutt* v. *Dangler,* 5 Mackey, 313, where it was held that it must appear from the record that the married woman had the separate property described by the statute.

In 2 Kent's Com. 155, the whole subject is discussed, and in a leading case, *Robinson* v. *Reynolds,* 1 Aikens' ·Vt. Rep., p. 174 (15 Amer. Dec., 773), the English cases are ably reviewed, and the conclusion reached that the wife could only sue and be sued as a *feme sole* when the husband was an alien *who had always* resided abroad, or was *civiliter mortuus,* as when he was exiled, banished for life, or had abjured the realm. This case is almost directly in point. The husband having deserted the wife and gone to Canada and lived there for four years at the time of the bringing of the suit, it was held that the suit could not be maintained. It is respectfully submitted that this question has been practically disposed of on principle in this District, in the case of *Williams* v. *Reid,* 19 D. C., 46, where it was held that a separation of two years and one month (which is three or four months longer than in the case at bar) is not a sufficient length of time to bring the case within the rule, that when the husband and wife have been living apart for a long time, the wife may sue and be sued as a *feme sole.* This case is identical with the celebrated case of *Marshall* v. *Rutton,* 8 Term Reports, where all of the English authorities were reviewed and the law settled. It was followed in 1809 by the case of *Boggart* v. *Frier,* 11 East, 303, which reaffirmed that decision and extended the principle to a case identical in principle with the case at bar.

*Mr. Leon Tobriner* for the appellee:

1. The question presented by the motion in arrest of judgment is whether a *feme covert* when deserted and abandoned by her husband, can contract, sue, and be sued as a *feme sole*. This was affirmatively held in *Rhea* v. *Rhenner*, 1 Pet., 105, and the rule therein announced has been followed by the courts of the various States wherein no statutory provision to the contrary existed. *Gregory* v. *Paul*, 15 Mass., 35; *Love* v. *Moyneham*, 16 Ill., 278; *Clark* v. *Valentine*, 41 Ga., 145; *Phelps* v. *Walther*, 78 Mo., 320; *Gregory* v. *Peirce*, 4 Met., 478; *Abbott* v. *Bayley*, 6 Pick., 89. "In general, the American authorities hold that a married woman, when deserted or abandoned by her husband, has capacity and power to earn, contract, sue and be sued, as an unmarried woman, while such desertion or abandonment continues. Kelly's Contracts of Married Women, 195; Schouler's Dom. Rel., Sec. 219; Stewart's Mar. & Div., Sec. 177 and authorities; Stewart on Husb. & Wife, Sec. 332; *Worthington* v. *Cooke*, 52 Md., 307; *Gallagher* v. *Delargy*, 57 Mo., 37; *Danner* v. *Berthold*, 11 Mo. App., 355; *Smith* v. *Silence*, 4 Iowa, 324; *Beckman* v. *Stanley*, 8 Nevada, 260; *Rosenthal* v. *Mayhugh*, 33 Ohio St., 164; *Arthur* v. *Broadnax*, 37 Am. D., 711.

2. It is claimed by appellant that plaintiff's replication to defendant's third plea is defective because it does not *specifically aver* that plaintiff's husband had gone beyond the jurisdiction of this District. 1st. The averments of the replication are equivalent in substance to such an allegation; and, 2d. This alleged omission *is cured by verdict*. Poe's Pleading and Practice, Vol. 1, Secs. 703 and 751.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The general common law rule applicable to a *feme covert* which denies to her the right to maintain a common law action without the joinder of her husband, remains in force;

but that general rule, like many others of common law origin, has had engrafted upon it from time to time, several well defined exceptions. These exceptions have been the product of improved conditions of society, and the necessities of destitute wives, and have been introduced by the courts to avoid the cruel and degrading consequences to the wife of the neglect and desertion of the husband. As instances of this, if the husband be banished or exiled, or has abjured the realm, or be a foreigner residing abroad apart from his wife, whom he has refused to support, such conditions, from the necessity of the case, introduced exceptions to the general rule of the wife's disability to contract; and, in such exceptional cases, she has been held capable of contracting, and of suing and being sued as a *feme sole*. In such cases, both the wife and her creditors would be remediless, without such exceptions to the general rule. 2 Kent Com., 154. Lord Coke states the exceptions to the general rule that had been recognized by the courts down to his time, in Co. Litt., 132*b*; but such exceptions have been extended since his day. It is easy to see, says Chancellor Kent, "that there might be most distressing cases under this principle, for though the husband be not an alien, yet if he deserts his wife, and resides abroad permanently, the necessity that the wife should be competent to obtain credit, and acquire and recover property, and act as a *feme sole*, exists in full force. It is probable that the distinction between husbands who are aliens, and who are not aliens, cannot long be maintained in practice, because there is no solid foundation in principle for the distinction." 2 Kent Com., 156-7. And the learned commentator refers to the case of *Bean* v. *Morgan*, 4 McCord's Rep., 148, where it was held, that if the husband departs from the State, with intent to reside abroad, and without the intention of returning, his wife becomes competent to contract, and to sue and be sued as a *feme sole*. The same principle was adopted in the case of *Gregory* v. *Pierce*, 4 Metc., 478, where it was held that if the husband deserts his wife, absolutely and completely, by a

continued absence from the State, and with an intent to renounce *de facto* the marital relation, the wife may sue and be sued as a feme sole. And the period of desertion is important only as it may be indicative of the intention of the husband to make his desertion permanent or otherwise.

The same principle would seem to be the established law of this District. In the case of *Rhea* v. *Rhenner*, 1 Pet., 105, a case taken to the Supreme Court of the United States from the Circuit Court of this District, it was held, that when the wife is left by the husband without support, and she has traded as a *feme sole*, and has obtained credit as such, she ought to be held liable for her debts; and that the law is the same, whether the husband is banished for his crimes, or has voluntarily abandoned his wife.

The replication to the third plea alleges that the husband wilfully deserted and abandoned the plaintiff, and has hitherto continued such desertion, and the plaintiff does not know the whereabouts of the husband, and that he has not contributed anything to her support, and that she has been compelled to support herself by means of business which she has conducted *as a feme sole trader*. She alleges that she has carried on such business partly with property belonging to her husband, left in her possession at the time of his desertion of her, and partly with property acquired by her own efforts and exertions since such desertion by her husband.

The property of the husband left in possession of the wife must be taken to have been intended as a means of support of the wife and her family; and to render such means available, it must be taken and intended to have been coupled with power of disposition. This was a question of intention to be passed upon by the jury. And so as to the allegation that the husband had wilfully deserted and abandoned the plaintiff, it must, after verdict, be intended that the husband had deserted the wife and abandoned and renounced this jurisdiction. Upon motion in arrest of judgment, the plaintiff is entitled to every intendment of law that can be reason-

ably made in support of the verdict. Everything that the defendant could object, will be presumed to have been made and urged at the trial, and it must be intended that they were overruled. *Merrick* v. *Bank of Metropolis,* 8 Gill, 59, 75. Or, as stated by Sergeant Williams, in his note to the case of *Stennel* v. *Hogg,* 1 Wms. Saund., 228, " that where there is any defect, imperfection or omission in any pleading, whether in substance or form, which would have been a fatal objection upon demurrer; yet if the issue joined be such as necessarily required on the trial proof of the facts so defectively or imperfectly stated or omitted, and without which it is not to be presumed that either the judge would direct the jury to give, or the jury would have given the verdict, such defect, imperfection or omission is cured by the verdict, by the common law; or, in the phrase often used upon the occasion, such defect is not *any jeofail* after verdict." And he cites many cases, and gives a great number of illustrations, in support of the principle stated.

We are of opinion that, upon the application of this principle of intendment, the verdict is sustainable upon the pleadings in the cause, and therefore the motion in arrest was properly overruled, and the judgment must, consequently, be affirmed.

*Judgment affirmed and record remanded.*