*Hall vs Mullin*

JUDGMENT AFFIRMED.

COURT OF APPEALS, JUNE TERM, 1821.

## HALL *vs.* MULLIN.

*Negroes held and claimed as slaves are presumed to be slaves*

*A slave over 45 years of age cannot be manumitted*

*The condition of slaves does not depend exclusively either on the civil or the feudal law*

*No contract, of any validity whatever, can be made with a slave, without consent of the owner*

*A devise of property, real or personal, to a slave, by his owner, entitles the slave to freedom, by implication*

APPEAL from *Prince-George's* county court. Trespass *quare clausum fregit*, in a close called *Partnership*. The defendant, in the court below, (now appellant,) pleaded the general issue. The judgment of the court below was rendered on a case stated. The facts are sufficiently detailed in the court's opinion.

*Judgment*, by agreement of the parties, was entered for the plaintiff. The defendant appealed to this court.

The case was argued before CHASE, Ch. J. BUCHANAN, EARLE, JOHNSON, MARTIN, and DORSEY, J.

*Pinkney, R. Johnson,* and *J. Johnson, jr.* for the appellant, relied on the act of 1796, *ch.* 67, *s.* 13. *Burroughs adm'r. vs. Negro Anna,* decided in this court at *June term* 1817. *Cooper's Just.* 109. 2 *Blk. Com.* 93. 4 *Bac. Ab.* tit. *Legacies and Devises,* (G.) 288. 1 *Harr. & M'Hen.* 559. *Negro Sally vs. Beatty,* 1 *Bay's Rep.* 260. *Cooper's Just.* (B. 2.) tit. 9. and the acts of 1715, *ch.* 44, *s.* 10, and 1787, *ch.* 33, and 1 *Harr. & M'Hen.* 559, *Mr. Dulany's* opinion.

*A. C. Magruder,* for the appellee, cited 1 *Blk. Com.* 423. and *Co. Litt.* (sect.) 177.

JOHNSON, J. delivered the opinion of the court. This was an action of trespass *quare clausum fregit*, brought in *Prince-George's* county court, by *Dolly Mullin,* the appellee, against *William A. Hall.* In order to bring the cause speedily before this court, where, let the decision of the county court have been what it might, the case was only to terminate, a judgment *pro forma* was entered in favour of the plaintiff, subject to the revision and determination of this court, on the statement of facts set forth and agreed on by the respective parties; and whether, on that statement,

the plaintiff was entitled to recover, is now for the deter-

mination of this court.

It is set forth in the case stated, "That *Benjamin Hall*, of *Prince-George's* county, was in his life-time *possessed* of a negro man named *Basil, claiming the same* as his slave, *and exercising acts of ownership over him, as such, during the life-time of said Hall*;" and that on the 4th of February 1803, he duly made and executed his last will and testament, in which is contained the following clause: "I hereby manumit and set free, from the time of my decease, my carpenter, called old *Basil*."

It is admitted that *Basil*, the person designed to be set free, was, at the time of *Benjamin Hall's* death, *upwards of forty-five years of age*.

By the will of *Benjamin Hall* certain property is given to his son *Henry L. Hall*, as well as to other children and grand-children of the testator, and *Henry L. Hall*, is made the executor, and took upon himself the trust.

It is also admitted that *Dolly Mullin*, the plaintiff below, was the slave of *Henry L. Hall*, and the daughter of *Basil*, to whom *Henry L. Hall*, (if practicable,) sold her, and in the month of April 1810, executed to him a bill of sale of her; and on the 26th of May 1810, *Basil*, as far as he was competent so to do, executed a deed of manumission to *Dolly Mullin*.

On the 6th of May 1817, *Henry L. Hall* duly made and executed his last will and testament, in which are contained the following clauses: "I give and bequeath to *Dolly Mullin* one hundred and forty-one acres of land, being part of a tract called *Partnership*, and part of what is called the manor land, (as heretofore surveyed and laid off, adjoining the now dwelling-house of *Basil Mullin*,) for the use and benefit of *Dolly Mullin*, and her son *Henry Mullin*, during the life of the said *Dolly Mullin*, and after her decease to be the right of the aforesaid *Henry Mullin*, his heirs and assigns for ever. I give and bequeath to my nephew *William A. Hall*, (the appellant,) my woman called *Milly*, and her future increase. I give and bequeath to *Dolly Mullin* two young negroes, one called *Joan* and the other *Aaron*. I give and bequeath to my niece *Anna M. Clarke*, my woman called *Rachel*, and my woman *Jenny and child*, and their future increase. I give and bequeath to my nephew *Benjamin H. Clarke's* youngest child, my

June 1821.

woman *Rachel's* daughter called *Friar*—To my nephew *Benjamin H. Clarke,* I give my man called *Harry Hickman.*" And after other dispositions in regard to the real estate, the will contains the following clause: "*Item.* I leave and bequeath *all* the *remainder part* of my negroes free." It is admitted, that *Henry L. Hall* was seized in fee of the land devised to *Dolly Mullin;* and that after his death, she entered on the land devised to her, and became seized as the law demands, on which land, it is admitted, the appellant entered and committed the trespass, for which the suit was brought.

On these facts the question for the determination of this court is—Whether the plaintiff below was competent to recover? and this depends on the *sole* question, whether she was, in law, *capable* of taking the land devised (or intended to be devised,) to her?

If the deed of manumission from *Basil* to her was effectual to set her free, then she was of course competent to take the land. If it was not, then the next question arises, was she set free by the last will and testament of *Henry L. Hall?*

On the part of the appellee it has been contended, that the facts do not make it appear that *Basil* ever was the slave of *Benjamin Hall,* but merely that he held and claimed him as such. But as negroes held and claimed as slaves are considered to be slaves, and as *Basil* is stated to have been "possessed," held and claimed, during the life-time of *Benjamin Hall,* as his slave, such, in the opinion of the court, must be deemed his predicament, and of course, unless he obtained his freedom under the will of *Benjamin Hall,* he had no civil rights himself, and was incapable, by any act or instrument of writing he could execute, to give freedom to the plaintiff, his daughter; and the court are of opinion, that as he was *upwards of 45 years of age,* when *Benjamin Hall,* his master, died, he was not manumitted by his will, because of the positive provision of the act of 1796, *ch.* 67.

It has been contended on the part of the appellant, that the condition of slaves in this state is regulated by the civil law, and that, as by that law slaves could purchase property for the sole use and benefit of their masters, that therefore, by the bill of sale of *Dolly* to *Basil,* the right to *Dolly* passed out of *Hall,* and became immediately vested in

the then owners of *Basil*, who were the general represen-tatives of *Benjamin Hall*. On the part of the appellee it is urged, that slaves in this state are similar to villains in *England*, when villanage existed in that country, and that, as in that country, when the villain purchased property it did not pass *immediately by or through him to his lord*, but remained in the villain until the lord entered on, or took possession of, the property; any disposition made of such property, before the entry was made, or possession taken, was valid.

To support the position from the civil law, *Cooper's Jus-tinian*, 107 and 109, was relied on. To support the right of the villain under the feudal law, *Littleton*, § 177, was cited.

As it appears by the civil law the property never abides for one instant in the slave, if the rights of *Dolly Mullin*, as derived from her father *Basil*, depend on that law, as *Basil* was incapable to manumit, no claim on her part can rest on a deed of his execution; but should her rights rest on the feudal law applicable to villanage, then as *Basil* ne-ver was disturbed in the possession of *Dolly* by any of the representatives of *Benjamin Hall*, or any other person, be-fore or after the deed of manumission was executed, that deed would be competent to set her free, and of course render her capable to take the land devised.

But the condition and rights of slaves in this state, de-pend exclusively neither on the civil nor feudal law, but may perhaps rest in part on both, subject nevertheless to such changes in their condition, and capacity to contract, as the laws of this state prescribe, and as contained in va-rious acts of our state legislature.

It is a well established rule of law, that no right can be derived under any contract made in express opposition to the laws of the place in which such contract is made.

By the act of 1715, *ch.* 44, *s.* 11, all persons are prohi-bited to "trade, barter, commerce, or any way deal with any slave," without the leave of the master, under a penal-ty. In the case before the court no assent was given to authorise a legal contract between *H. L. Hall* and *Basil*, and as such a contract, without the owner's assent, is ex-pressly prohibited, it follows that no right can be derived under it, either to *Basil* himself, to the representatives of *B. Hall*, or to any person claiming by or through him.

From what has been said, *Dolly Mullin*, the plaintiff below, must be considered a slave unless she is set free by the will of *Henry L. Hall*, who must, notwithstanding all the dealings between him and *Basil*, be considered her master.

At the time the will of *Henry L. Hall* was made, it was completely in his power to have set her free, and the question is, has he done so by implication, or by the *true* construction *of his will, taking all its parts together?*

It was admitted, and could not be denied, that by the devise of the land, and the bequest of other property, to *Dolly Mullin*, she must be freed in order to give effect to such devise and bequest. Her freedom then would certainly be implied from the devise itself, in order to give it effect in the absence of circumstances rebutting such an implication. Those relied on are, the bill of sale to *Basil*, and his deed of manumission.

Nothing appears more manifest to the court, but that it was the intention of the testator that *none* of his slaves should remain slaves after his death, other than those he *named and bequeathed as slaves;* for in every instance, when he intended that they should pass by his will to others, as slaves, they *are described by name*, as manifestly appears by the clauses in the will before selected; and it is equally clear, that *all*, except *those* so given as *slaves*, he intended should be free. How different is the language of that part of his will disposing of a portion of his negroes as slaves, and that part *giving* another portion freedom. The first class are described by their *respective names;* the latter are included in the *sweeping* clause by which he gives freedom to "all the remainder part of my negroes."

Let us then suppose that *Dolly Mullin* had not been named in the will, and had turned out to be the property of the testator at the time he made his will, or at his death, would she not have been entitled to her freedom under the general clause by which freedom was given? As well might it be contended, that real property, to which the testator did not know he had a right, would not pass *under a clause* devising *"all the rest and residue of his estate."*

But without the aid of the residuary clause she would have a right to freedom, under those parts of the will by which property was given to her; her freedom by implication, is indispensably necessary to give efficacy to those clauses of the will. Without such an implication, all the disposi-

tions of his property, made in her behalf, would be void; with it, the will is carried into effect and complete operation.

CHASE Ch. J. I am of opinion that negro *Basil*, being above the age of 45 years at the time of the death of *Benjamin Hall*, was not manumitted and set free by his will. That *Basil*, being a slave, was incapable of taking and acquiring any property in *Dolly Mullin*, under the bill of sale from *Henry L. Hall* to the said *Basil*, and that the said bill of sale was void. I am also of opinion, that *Dolly Mullin* being the slave of *Henry L. Hall*, the will of the said *Henry L. Hall* will operate, and is effectual to manumit and give freedom to *Dolly Mullin*, and that she acquired a capacity, and was rendered capable of taking, and did take, the lands devised to her under the said will. That the two clauses in the said will, the one by which he devises 150 acres of land to *Dolly Mullin*, and the other by which he gives freedom to his slaves, are simultaneous acts, and are so to be construed as will give efficacy to his will, and effectuate his intention fully as disclosed in his will. The testator imagined *Dolly* was free; she was not free, but a slave, at the time the will was made, and being a slave, the will operated to give her freedom, and the lands devised to her.

JUDGMENT AFFIRMED,