# William H. Tuck, Ex. of Robert W. Bowie, vs. Robert Bowie.

In an action of replevin brought by a father's executor against his son, to recover back negroes delivered by the former to the latter, in part execution of a marriage contract with the father of the lady, the declarations of the father of the son are admissible to prove the circumstances connected with the gift, and his motives for making it.

All the proof furnished by the declarations of the plaintiff's testator relative to such gift and delivery, and the terms of the marriage, are admissible in evidence, when offered by defendant, resisting a claim to the negroes set up by the plaintiff.

The agreement of the father of the son need not be in writing, in order to defeat a claim of the executor of the father, to a return of the negroes.

Upon appeal from Prince George's county court in an action of replevin, brought by the appellant against the appellee, to recover negroes alleged to belong to the estate of the appellant's testator. Pleas, *non cepit*, property in defendant, and property in a stranger. Issues were joined, and upon all the issues the verdict was for the defendant.

In the progress of the trial, the plaintiff took three bills of exceptions.

*1st Exception.* The plaintiff having offered proof of his title, the defendant offered proof that the plaintiff's testator had declared, that he had placed the negroes in controversy upon the farm occupied by the defendant, in part performance of the agreement entered into by him with the father of the defendant's wife, with reference to the marriage of the defendant, (who was the testator's son,) with her. This testimony was objected to by the plaintiff. But the court permitted it to go to the jury, and for this the first exception was taken.

*2nd Exception.* The defendant read to the jury a deed from the testator of the plaintiff to J. T. Stoddart of a tract of land, and then offered to prove by Stoddart, that he is the father of the defendant's wife; that prior to their marriage, he had orally agreed with the plaintiff's testator, that he would buy a farm

for his daughter and her husband, the defendant, at $12,000, and that the plaintiff's testator should put upon the farm personal estate, of the value of $10,000. The defendant was married to the daughter of witness 28th May 1846, and in the month of July in that year, he purchased the land, subsequently conveyed to him by the plaintiff's testator, and put his daughter and the defendant in possession of the said farm. He further offered to prove by said witness, that the purchase of the land aforesaid was intended by him, as the execution of his part of said agreement of February 1846; and further, it was a part of the agreement between witness and plaintiff's testator, that the land should be conveyed to him, and that it was not to be conveyed to the daughter of witness, until the plaintiff's testator had complied with his part of the contract. This agreement was known to the defendant and his wife before their marriage. The court, although it was objected to by the plaintiff, offered the whole of this testimony to go to the jury, and for this the second exception was taken.

The third exception taken by the plaintiff, was to a refusal by the court to instruct the jury, that if they should believe from the testimony that the said alleged agreement between Stoddart and the plaintiff's testator, was not in writing, and by its terms Stoddart was to convey land to said testator's son, before he was to furnish the personal property, and by said agreement the title to the personal property was to remain in the plaintiff's testator, until such farm was conveyed. Also because the court instructed the jury, at the instance of the defendant, that if they find from the testimony that the said negroes were delivered by said testator to the defendant, in part performance of a contract of marriage on the part of the plaintiff's testator, which marriage was entered into after such contract was made, then, that the defendant is entitled to recover.

This case was argued before LE GRAND, C. J., and ECCLESTON and MASON, J.

By *Mackubin* and *Pratt* for appellant, and by *T. F. Bowie* and *Causin* for the appellee.

*Mackubin* for appellant.

The testimony in the first exception has relation only to a title by marriage contract, and no aid can be brought to this exception from any subsequent evidence. An agreement, in contemplation of marriage, must be in writing, and subsequent marriage cannot make the contract valid. *Com. on Con.*, 207. *Atherley*, in 27 *L. L.*, 81. 1 *Bl.*, 287. 27 *L. L.*, 45, 78, 149. 12 *Vez.*, 74. 1 *Story Eq. Juris.*, sec. 374.

No delivery or part performance can in law support a void contract, under the statute of frauds. 2 *John. Rep.*, 221, *Jackson vs. Pearce*.

Part performance is only available in equity. 1 *Pick.*, 328. 2 *Stark. Ev.*, 482, note 1. 6 *Vez.*, 29, 184. 1 *Vez.*, 196.

There is no evidence here that the defendant knew of the agreement. 27 *Law Lib.*, 82, 85, *marg. page*. 1 *Bl.*, 289, *Ogden vs. Ogden*. 2 *Starkie on Ev.*, 598.

*2nd Exception.* Stoddart's testimony, as stated in this exception, is inadmissible, because it is at variance with the deed, which is to him, absolutely; nothing like a trust in it. Also as proving a parol agreement not valid.

As to the consideration of the deed: 1*st Gill*, 412. 10 *G. & J.*, 248. 9 *G. & J.*, 91.

The land is purchased after the marriage, and this alleged part performance, is no part performance of the agreement of February 1846. It is a new contract after marriage, and formed no consideration of marriage. The agreement of 1846 was only a treaty. A contract must be complete, and not a mere treaty even in equity. 67 *L. L.*, 36. 1 *Bl.*, 288, 289.

*3rd Exception.* It was wrong to submit to a jury what is a part performance of a contract. This is question of law.

*Causin* for appellee.

The rights of creditors, are not interfered with. There is nothing in the first exception to show, that the agreement was not in writing. It is not necessary to state in a nar, that the contract is in writing. 1 *Ch. on Pleading*, 303. 2 *Steph. Nisi Prius*, 1962.

We are not plaintiffs, but the defendants in the cause; we are not asking a court of equity to enforce a contract which has been performed in part. The statute only relates to suits, to enforce an executory contract. 13 *Pick.*, 4. 2 *Esp. Rep.*, 598.

Parol evidence, may be given to show part performance or delivery. 1 *Gill*, 388. *Hall vs. Hall*, 7 *H. & J.*, 134. *Roberts on Frauds*, 200. Parol agreement on marriage, and settlement afterwards, is binding. *Roberts on Frauds*, 200.

Part performance by one, is sufficient. 3 *Gill*, 156. 2 *G. & J.*, 217. 2 *Sch. & Lefroy*, 147.

Conveyance in consideration of marriage, is a good consideration against the party. 5 *Gill*, 456.

As to a good consideration, (marriage,) 27 *L. L.*, 183, 213. 2 *G. & J.*, 217.

A parol gift is good. 3 *H. & J.*, 493, 495, 496. 4 *H. & J.*, 310.

*2nd Exception.* We do not attack the consideration of the deed, and other considerations may be .shown. We simply give parol evidence of possession, having been delivered of the land. Consideration, not inconsistent with that which is expressed, may be proved. 1 *H. & G.*, 191, 202. 2 *H. & G.*, 294. 1 *Gill*, 423. 2 *Story's Equity*, sec. 759.

A breach of contract by one, in the case of a marriage contract, does not release the other, but the married persons, or their issue, may enforce the contract. 1 *P. Wms.*, 177. Even the children are purchasers. Even if Stoddart did not perform his part of the contract, this no excuse for a nonperformance by the father of the defendant.

*3rd Exception.* Parol agreement, and marriage afterwards, and settlement, good. *Chit. on Contracts*, 206. 1 *Vez.*, 196. 1 *P. Wms.*, 618, 771, *(note 1.)* 4 *East.*, 201, 207. 1 *Pick.*, 328.

There is no error in leaving to the jury, the question of part performance, as that must depend on facts.

*Bowie* for the appellee.

If the testator was alive, and could not object here on the ground of a want of consideration, his executor cannot. *Roberts on Fraud. Conveyances*, 218. The case in *2nd John.*, 221, only decides, that in ejectment, an equitable title cannot be set up against a legal title. *Roberts on Fraudulent Convey.*, 228. A voluntary settlement after marriage, is good against the donor. *Roberts on Fraud. Convey.*, 228. If a bill was filed by the appellant, to vacate this gift, it would be dismissed. Can he be more successful in an action at law?

*2nd Exception.* As to parol evidence in regard to instruments of writing. *Roberts on Frauds*, 11.

We do not contradict the deed.

*3rd exception.* The plaintiffs' testator *claimed*, that the title of the negroes was in him, because Stoddart had not complied. He waived the performance by Stoddart, when he delivered the negroes.

There is no evidence that the testator's agreement was to depend on a performance by Stoddart, or a conveyance by him, or that the delivery of the negroes was *conditional.*

*Pratt* for appellant.

As to evidence in regard to written agreement. *1st Starkie on Evid.*, 1003, 1066. If it was a parol contract, the terms of it must be shown. Does the evidence show such a contract and delivery as gives title?

I do not controvert that a gift may be good; but the proof offered is not of a gift, under the act of 1763, ch. 13, there must be a delivery of negroes at the time of the gift. See 7 *H. & J.*, 147.

The intended husband had no knowledge of the agreement; and therefore could not be an inducement to the marriage.

*Story's Equity*, sec. 374. 12 *Vez.*, 73.

When part performance is insisted on, you must show what the agreement is, and you must show that the part performance, is a part compliance with the agreement.

Even a subsequent written recognition of an anterior con-

tract will not answer. 12 *Vez.*, 67, 74. *2nd Johns. Ch. Rep.*, 488. If in writing, the contract itself is the best and only admissible evidence. 1 *Starkie Ev.*, 103.

Parol evidence of the admission of the party in relation to it is inadmissible. 5 *Conn. Rep.*, 451. 6 *T. R.*, 8. 3 *T. R.*, 413. *Bosanquet and Puller*, 270.

The testimony must show a part performance of the identical contract. 1 *John. Ch. Rep.*, 131.

In regard to essentials of a gift under the act of 1763, ch. 13: See *Isaacs vs. Williams*, 3 *Gill*, 278.

Can a mere verbal marriage contract be set up at law as evidence of title? 3 *Stark. Ev.*, 996, '7.

By the 4th sec. of the statute of frauds, marriage contracts are void, unless constituted by writing. 1 *Bland*, 287.

Even a subsequent written recognition of an anterior contract, wont do. 12 *Ves.*, 67, 74. 3 *John. Ch. Rep.*, 488.

If in writing, then it follows that the contract itself is the best, and therefore the only admissible evidence. 1 *Stark. Ev.*, sec. 75, *p.* 103.

Parol evidence of the *admissions* of the party in reference to it, *inadmissible.* 5 *Conn. Rep.*, 451. 3 *Stark. Ev.*, 1003. 5 *Term Rep.*, 6. 3 *Stark. Ev.*, 1006. 3 *Term Rep.*, 413. 1 *Bosanquet and Pul.* 270.

The testimony of Stoddart, which sets up a different use from that stated in the deed, was inadmissible. 3 *Stark. Ev.*, 1004. 13 *Mass. Rep.*, 443. 1 *Murphy*, 449. 1 *Bay*, 461. 15 *Mass. Rep.*, 218.

The part performance must be of the identical contract. 1 *John. Ch. Rep.* 131.

But it is insisted that this was an executed contract.

Now the only proof of the contract, is the testimony of Stoddart, in the second exception, and this is in words shown to be an executory contract.

We insist that a bill filed by Bowie and wife, against Stoddart, for a conveyance of the land, could not be sustained. 1 *Murphy's Reports*, 449. 1 *Bay's Rep.*, 461.

In regard to the essentials of a gift, under act 1763, ch. 13, *Isaac vs. Williams*, 3 *Gill*, 278.

*2d Exception.* Stoddart is the only witness who attempts to prove the agreement, and he is the party injured. The deed is an absolute one—no trust—no testimony would annul the deed. Cannot by parol testimony, show an intention, not to be found in the deed. *Starkie's Ev.* 1009, 2004, as to the consideration.

Stoddart's testimony is to show that the deed was for husband and wife.

*3rd Exception.* Robert Bowie is defendant's witness, and proves that plaintiff's testator said, that he did not transfer title by the delivery of the negroes.

ECCLESTON, J., delivered the opinion of the court.

The negroes included in this replevin, were originally the property of the appellant's testator, but at the time of his decease, they were in the possession of his son, the appellee.

It is alleged on the part of the defence, that in contemplation of a marriage between the appellee and the daughter of John T. Stoddart, an agreement was entered into between the fathers of the intended husband and wife. In which it was stipulated, that John T. Stoddart should purchase a farm for the use of his daughter and her husband; and that R. W. Bowie should place on said farm, personal property to a certain amount. That the farm was purchased and possession given to the husband and wife. That R. W. Bowie put upon the farm in part execution of his portion of the contract, the negroes in dispute.

At the trial, three bills of exceptions were taken. The first, arises upon the question as to the admissibility of testimony, designed to prove the agreement, and the delivery of the negroes in part performance.

This proof was objected to upon the ground, that there was no evidence of any writing, to take the case out of the statute of frauds, and that part performance could not supply this defect. It was also urged in argument, that the testimony should have been rejected, because it did not appear in this exception that the defendant had any knowledge of the agree-

ment, and if he knew nothing of its existence, it was no inducement for the marriage.

That a parol agreement, purely executory, is void under the statute of frauds, there can be no doubt. And when there has been part performance, the unexecuted portions of the contract cannot be enforced in a court of law. But in equity, parol proof is sufficient to entitle a party to a specific performance.

It has been contended on behalf of the appellees, that the subsequent delivery of the negroes, rendered a written agreement unnecessary, and gave a right of possession, which in this action, will prevent a recovery by the plaintiff. Although it may be conceded that the appellee, in a suit at law, could not recover property included in this agreement, but never delivered, it does not necessarily follow, that he cannot successfully resist the present claim. But the argument urged by the plaintiff's counsel assumes, that part performance will not, in a court of law, afford any protection to a defendant, even as to the property actually delivered. The authorities referred to on this point, do not furnish an instance in which the right of a defendant to personal property is involved. *Jackson vs. Pierce*, 2 *John. R.*, 221, is an action of ejectment. The defendant had but an equitable title. In New York and other States of the Union, such a title in ejectment, will not prevent a recovery by the plaintiff, having a legal title. When the character of the suit, and the nature of the property are considered, it is not perceived that the language of the court can apply with any force to the subject before us. By ejectment, the party may be turned out of possession, and his only relief would be to enforce a specific performance in a court of equity. It may very properly be said under such circumstances, that part performance is not available at law, but in equity. In Pennsylvania however, where they have no separate chancery court, possession held under a parol agreement, is a good defence in ejectment. 2 *Serg. & Rawle*, 354. In *Kidder vs. Hunt*, 1 *Pick.* 328, the principle decided is, "that part performance of a parol agreement relating to an interest

in land, does not take the contract out of the statute of frauds, so as to sustain an action at law for damages, for the breach of the contract. But assumpsit will lie for the expenses incurred in such part performance." Reference has been made to other authorities on this branch of the case, but they relate to bills filed to enforce specific performance of unexecuted portions of verbal agreements. These cases do not present directly the question involved in this issue. There is no effort here to set up, either as the foundation of a suit, or by way of defence, an equitable title to land claimed under an unwritten contract, by virtue of having received the possession. Nor does the appellee seek to recover personal property under such a contract, which was not delivered to him. But he simply claims the right to hold certain negroes received by him under the agreement already mentioned. And the evidence to prove the agreement and delivery, are the declarations of the party under whom the appellant claims. A contract void under the statute, cannot be established by subsequent parol admissions only, as to its having been made; but such admissions will be received as evidence, if they acknowledge, not only the existence of the agreement, but also that it has been in part executed. See *Dugan et. al., vs. Gittings, et. al.*, 3 *Gill*, 156 ; and *Hall vs. Hall*, 1 *Gill*, 388 and '9.

The action of replevin in this State, requires the plaintiff to prove his title to the property, and also his right of possession at the time the writ issues.

Possession of personal property is *prima facie* evidence of a right of possession. When that right is assailed by evidence of title in the plaintiff's testator, his declarations, (adverse to his interest,) as a general rule, must have an important bearing upon the issue. Looking to the first exception, (and this we are confined to at present,) it appears that R. W. Bowie said, "that he had placed the negroes in controversy on the Nottingham farm, on which the defendant then resided, in part performance of an agreement entered into by him and John T. Stoddart, in reference to the marriage of the defendant with Miss Stoddart, (daughter of the said John T. Stod-

dart,") which statement was made after the marriage, and repeated in frequent conversations. These admissions show, that under an existing marriage contract the negroes were delivered. There is no restriction or qualification of the right of possession, by any condition to be performed, or by any limitation in regard to time, which time has expired; nor is there any reference to a failure to comply on the part of J. T. Stoddart. Such an acknowledgment dispenses with the necessity of proving a written agreement.

We will now proceed to consider the objection, that the defendant had no knowledge of the alleged contract, and therefore it constituted no inducement for the marriage.

In support of this objection, we have been referred to *Atherley on Marriage*, 27 *Law Lib.*, 82. 1 *Bl. Ch. R.*, 289, *Ogden vs. Ogden.* Atherley and Chancellor Bland, both, rely upon the same authority, which is *Ayliffe vs. Tracy*, 2 *Peere Will.*, 65. The report of the case is very short, but it is distinctly stated, that the intended husband knew nothing of the letter which it seems was used in evidence. The authority of this case is somewhat questioned by Atherley, in note 1, on page 82, in consequence of a mistake, on the part of the lord chancellor, as to the facts. According to this note the promise, if any existed, was actually made by the father of the lady to his intended son-in-law, and the letter spoken of was written to the daughter, informing her of what had transpired. Among other grounds for dismissing the bill, the lord chancellor said: "That the plaintiff did not know of the letter, and therefore could not be supposed to have married in confidance of it." In *Ogden vs. Ogden*, Chancellor Bland decided, that the letter in that case formed no inducement for the marriage, because it was written after the engagement took place. These cases go no farther than to establish the position, that where the party is *shewn to be ignorant* of the agreement, it is no part of the consideration. Here we have no direct or positive proof, as to whether the appellee had or had not, a knowledge of the contract prior to the marriage. But assuming that such knowledge must be shewn to exist,

positive proof need not be given. It may be inferred from circumstances. To make a valid parol gift of negroes, there must be a delivery. In *Isaac vs. Williams*, 3 *Gill*, 278, the Court of Appeals say: "The defendant had offered evidence from which the jury might find a gift of the negroes to the plaintiff's wife, and on the hypothesis of the existence of such a gift, to make it valid by a true construction of the act of Assembly, the jury must have found that there was an express delivery of the negroes, and the transfer of the use and possession of the negroes from the defendant to the plaintiff. But evidence of a witness who saw the delivery was not necessary. The delivery, like other facts, may be proved by inferential testimony."

When two persons are thinking of a matrimonial alliance, and there is no objection to its consummation manifested by the friends of either; but on the contrary the parents enter into an arrangement to provide ample means for their support; nothing can be more natural, than for the father of the intended husband to inform his son of that which is so well calculated to promote and accomplish his wishes. And if in the entire absence of all proof, of any other means of providing for the maintenance of a family, than those which are to come from the parents, the marriage takes place, and the property contemplated in the arrangement, or a considerable portion of it, is actually found in the possession of the husband, and acknowledged by his father to have been placed there by him under the agreement, a rational mind, in the absence of any proof to the contrary, might infer, that the son had a knowledge of the agreement, and that without going into the field of wild and speculative conjecture. We do not intend to say, from such facts, the jury must infer notice, but that the testimony is proper to be considered by them.

This objection, as to want of notice, is based upon the assumption, that the contract was prior to the marriage. And we have hitherto considered the case in that view. But the testimony in this exception does not shew, clearly, whether it was before or after. The witness speaks of frequent con-

13    v.1

versations after the marriage, in which R. W. Bowie said he had placed the negroes on the Nottingham farm, in part performance of an agreement entered into by him and J. T. Stoddart in reference to the marriage; but there is no direct statement as to when the agreement was made. If, however, it was subsequent, the testimony would still be admissible.

A voluntary settlement by parents after marriage, is good against them and their immediate representatives. Indeed, some authorities assert it to be valid against general creditors. But we need express no opinion on that subject, as the rights of creditors are not presented in this issue.

The act of the testator binds his executor, and he cannot annul what he has done, treating it as void because it is repugnant to the interest or rights of creditors. At all events he will not be permitted to do so by means of an action of replevin. See 7 *G. & J.*, 96, *Allen vs. Negro Sharp.* 11 *G. & J.*, 185, *Chase vs. Lockerman.*

If the transaction is one, occurring subsequent to the marriage, it is then said to be simply a gift of negroes, and under the act of 1763, ch. 13, actual delivery at the time was necessary. Admitting this to be correct, the testimony does not necessarily conflict with the idea of a delivery at the time of the agreement.

A further ground urged for reversing the opinion of the court below, is, that the agreement proved is not such as a court of equity would enforce under a bill for specific performance. Under the circumstances of this case, we do not feel ourselves called upon to decide what, as a court of equity, we would decree if such a bill was pending. There are agreements or arrangements of an inchoate character, which neither a court of law or equity would carry into effect, but which, if executed, or property delivered under them, neither court would lend its aid to revoke or annul, or to effect a recovery of the property or money from the party having the possession. The case of *McNulty vs. Cooper*, 3 *G. & J.*, 218, presents this point in a very clear and decided manner. After a full consideration of the objections urged, with much ability, in argument, we think the testimony was admissible.

By the second exception, we are also asked to revise an opinion of the court, allowing testimony to be given which was objected to by the appellant. The proof here offered shews, that the original agreement was made, and that the intended husband and wife knew it before the marriage.

The first ground of objection is, that the contract was not in writing, as required by the statute of frauds. Having disposed of a similar point, in considering the former exception, it is unnecessary to say more at present.

The second objection is, that so much of the testimony of John T. Stoddart as expressed his intention to consider the purchase of the land conveyed to him a compliance, on his part, with his contract of February 1846, was not admissible, because the deed to him is absolute upon its face.

This is based upon the rule, that parol evidence will not be received, to contradict, explain or add to a written instrument.

The witness had spoken of the parol contract between R. W. Bowie and himself. According to his view of it, he was to purchase a farm for the benefit of his daughter and her husband, and put them in possession. R. W. Bowie was to place upon the said farm certain personal property. After stating that the marriage had taken place on the 28th of May 1846, and that he, Stoddart, had purchased of R. W. Bowie, in July of the same year, the farm mentioned in the deed, then follows the expression of his intention in regard to the purchase. This we do not consider a violation of the rule alluded to. It is not said that this intention formed a part of the consideration for the sale of the land. The price was paid by Stoddart out of his own funds. At least there is no attempt to shew that it came from any other source. The *original agreement* did not bind him to purchase this particular estate. If he had bought one, of equal value, from an entire stranger, and put the married pair in possession, the compliance on his part would have been quite as perfect, as the purchase and delivery of the land included in the conveyance.

The proof of such an intention does not interfere with, or in any manner impugn, any right or interest of R. W. Bowie, in or to the *said farm.* He conveyed the land, in fee-simple, to the grantee in the deed, for the consideration expressed therein. And this conveyance is not inconsistent with an intention on the part of Stoddart to purchase the land, for the purpose of enabling him to fulfill his portion of the agreement, by putting his daughter and son-in-law in possession, and ultimately conveying the same to her. Which conveyance, according to his understanding of the contract, was not to be made until after R. W. Bowie had fully complied with his engagement. This objection, it is to be recollected, points especially to the offer to prove by J. T. Stoddart, "that the said purchase of said land was intended by him as the execution of his part of the contract of 1846." Having paid the purchase money, and obtained a deed for the property, his mere intention to appropriate the same, in the manner above expressed, did not create any right which could have been enforced against him, even if that intention had been stated by him. Under such circumstances, what inconsistency is there between the deed and the testimony? Giving possession afterwards, in part performance of the original contract, might vest a right which a court of equity could enforce.

The third ground of objection assigned in this exception, against the propriety of admitting the testimony is, "that the contract as altered and alleged to be consummated on the part of the witness was after the said marriage, and did not form the consideration for its being entered into."

Our views already expressed in regard to a gift or settlement made after marriage, disposes of this objection. We therefore think there was no error in permitting the testimony to go to the jury.

We agree with the court also in the opinions expressed in the third exception.

A failure to comply by one party to a marriage contract does not release the other after the marriage has been consummated. Such a contract is not similar to those of an ordina-

ry character.    Rights are secured to the husband and wife, and to the issue of the marriage, which entitle them to compel a compliance by either party, although the other has failed to discharge his obligation.    Unless, indeed, there is a condition precedent.    But such a condition must appear clearly and unequivocally to have been intended by the terms of the contract.    These positions are fully sustained in *Mac Queen on Husb. and Wife*, 235 and 236, in 66 *Law Lib.*    This author in speaking of precedent conditions, says, "so strong is this rule, that in a late case, where there were at least plausible grounds for maintaining that the covenants were intended to be dependent on each other, and where default was made on one side, the court, nevertheless, gave effect to the claims of the children."    The case he refers to is *Lloyd vs. Lloyd*, 2 *Myl. and Ca.*, 182.

In our opinion, the testimony in the present case could not justify the granting of the plaintiff's prayer.    It is predicated upon the assumption that Stoddart was not only bound to purchase a farm and deliver the possession to his daughter, but also to convey the same before there was any obligation on Bowie to deliver the personal property to his son.    That in the event of a delivery of the negroes before a conveyance of the land, the title to them should remain in Bowie, (the father,) until the land should be conveyed.    And that if he delivered the property in confidence that the land would be conveyed, this action could be maintained, unless the jury should believe the conveyance had been made.

The declarations of R. W. Bowie, to be found in this exception, were relied upon to sustain the prayer.    It will appear that they were made after the marriage and since the delivery of the negroes.    He complains of Stoddart for not having complied, and says he considered the title to the negroes to be in himself, because of the failure on the part of Stoddart. This is more the expression of an opinion as to the construction of the contract, than a statement of its terms.    And R. W. Bowie's own declarations shew, that he delivered the negroes in part performance of his part of the con-

tract, at a time when he knew the farm had not been con-veyed. In one of his conversations, he asserts that he had very nearly complied with his engagement; that the negroes and other property he had given to his son, were worth nearly $6000, and that he should insist on the value of the negroes and other property so delivered to the defendant, *as a pay-ment on account* of said contract. Which instead of sus-taining, rather excludes the idea of a conditional delivery with a reservation of the title. And this distinguishes the present case from that of *Corse vs. Patterson*, 6 *Har. and John.*, 153. There it was expressly stipulated at the time of the sale, that the title was to remain in the vendor until the purchase money was fully paid.

*Judgment affirmed.*