# THE PRESIDENT AND VISITORS OF THE MARYLAND HOSPITAL v. EDWARD FOREMAN.

## Decided December 16th, 1868.

CORPORATIONS ; POWERS ; ACTS *ultra vires ;* NOT BINDING ; PARTIES *in pari delicto.*

The Maryland Hospital agreed with F., in consideration of $1,200, to support his sister, then a lunatic patient in the institution, for the remainder of her life. The money was paid. F. also fully paid for the support of his sister to the 1st of July, 1863, and the sum paid in commutation, relieved him from that date from any further charge in the future for her support. The lunatic died on the 12th of August, 1864. Subsequently, F. sued the hospital to recover back the sum he had paid under the contract, *less the necessary expenses incurred in **525** the support of his sister, from the 1st of July, 1863, to the 12th of August, 1864. *Held:*

That the hospital had no power under its charter to make this contract with F.; it was *ultra vires,* not binding on the corporation, and could not have been enforced in favor of F. (*a*)                p. 531

That the contract was neither *malum in se* nor *malum prohibitum,* and the parties to it were not *in pari delicto,* and F. was entitled to recover back the sum paid by him, less the amount properly chargeable as a fair

---

(*a*) But see *German Aged Home v. Hammerbacker,* 64 Md. 595.

and reasonable allowance for the care and keeping of his sister during the period which intervened between the 30th of June, 1863, and the 12th of August, 1864, the date of her death.                    pp. 531-532

If a party makes a contract with a corporation, which is simply beyond the powers of the latter, he may recover money paid thereon, whether the contract be executed or executory.  (*b*)              p. 532

If a contract be illegal in itself, or is in violation of some statute or against public morals, courts of justice will not aid to enforce it.  Such a contract, while executory, may sometimes.be disaffirmed, and money paid, recovered.  But after it has been executed, if the parties stand strictly *in pari delicto*, it may not be rescinded, and the parties are left without remedy.  (*c*)                                p. 531

Corporations are limited to the exercise of such powers as are expressly granted by law, and such as are necessary and usual in the course of their business, to enable them to attain the purposes of their creation.  (*d*)                                      p. 530

Appeal from the Superior Court of Baltimore City.

On the 6th of December, 1851, Jane Foreman, a lunatic, was admitted a patient in the Maryland Hospital, at $3 per week, payable quarterly in advance, at the request of her brother, the appellee, who gave his written obligation with a surety, to the appellants as required by them.  The charge, per week, was altered from time to time, and the sums, so charged, were paid duly by the appellee continuously to the 1st July, 1863;—he discharging the same for a considerable portion of that time out of his own means.  In the spring of 1863, the appellee being in delicate health, and about to leave Maryland for an indefinite time, and influenced also by the disturbed state of the country, desired to make some arrangement of a permanent kind for the support of his lunatic sister

---

(*b*)  Cited in *Heironemous v. Sweeny,* 83 Md. 158.  *Cf. Maguire v. Corwine,* 101 U. S. 108.

(*c*)  But although a corporation may act in disagreement with its charter, yet a party who has had the benefit of the act cannot be permitted to question its validity; *German Aged People's Home v. Hammerbacker,* 64 Md. 595; *German Bank v. Katz,* 57 Md. 128.  As to parties *in pari delicto,* see *Roman v. Mali,* 42 Md. 532; *Brown v. Reily,* 72 Md. 492; *C. & O. Canal Co. v. Allegany Co.,* 57 Md. 221; *Snyder v. Snyder,* 51 Md. 80; *Schuman v. Peddicord,* 50 Md. 562; *Scott v. Leary,* 34 Md. 394; *Lester v. Bank,* 33 Md. 562; *Gotwalt v. Neal,* 25 Md. 446.  As to illegal contracts generally, see *Merrick v. Bank,* 8 Gill, 45, note (*c*).

(*d*)  See *Plank Road Co. v. Young,* 12 Md. 476-477, note (*b*); *Steam Navigation Co. v. Dandridge,* 8 G. & J. 156, note (*b*).

at said hospital, and so stated to its Medical Superintendent. After some negotiation on the subject, on the 6th April, 1863, the superintendent, by letter, informed the appellee that $1,200 cash would be accepted in commutation. Accordingly, on the 17th of April, 1863, the appellee, from his own means, paid that sum to the appellants, " for support of Miss Jane Foreman during life, in the Maryland Hospital, including all expenses." Miss Foreman died on the 12th of *August, **526** 1864, after an illness of a few days, and was buried at the appellee's expense. The appellee claimed that after deducting the proper and reasonable charges for the support and care of his sister from the 1st of July, 1863, to the 12th of August, 1864, the date of her decease, the balance of the $1,200 was rightfully payable to him by the appellants. And this action was instituted to recover the same. A single prayer was offered on either side. The court (Martin, J.) granted the prayer of the plaintiff, and rejected that of the defendants. To this ruling of the court, the defendants excepted, and the verdict and judgment being against them, they appealed.

The cause was argued before Bartol, C. J., Nelson, Stewart, Brent, Grason, Miller, Alvey, and Robinson, JJ.

*William J. Jones* and *Archibald Stirling, Jr.,* for the appellants:

The contract entered into between the appellants and the appellee, was neither illegal nor contrary to public policy. Miss Foreman was legally committed to the hospital by her committee, her mother and the mother of the appellee. The estate in the hands of the committee became exhausted, and the patient continued incurably insane. The mother died, leaving the appellee the sole natural support of the lunatic. The war came on. The future was uncertain. The appellee was possessed of property. He knew *then* what he was worth. He did not know what, as the war went on, he might be worth. His health had failed and his own labor could not be relied on to support himself or the afflicted sister. He was about to leave Maryland for a distant part of the country. He had either to make this arrangement, which, from his possession of a definite capital, he then knew he could make,

or leave his sister incurably insane, utterly unprotected and without provision for her future support. On the part of the 527 *appellee, the contract was dictated by the very best motives and the most reasonable view of existing and probable facts. On the part of the hospital, the desire was to meet the appellee's wishes and they made the arrangement securing to the patient a support during life, and though done reluctantly, it was done by the deliberate action of the Board of Visitors.

The only cases at all similar to this are various ones in this country where land has been conveyed to grantees by aged persons, on the covenant of the grantee to keep the grantor in the house of the grantee, and provide him with all necessaries during his life; and such covenant has been held good. *Jackson v. Florence*, 16 John. 47; *McLean v. Button,* 19 Barb. 450; *Sanders v. Wagonseller,* 19 Pa. St. 248; *Shontz v. Brown,* 27 Pa. St. 254 ; *Gault v. Hall,* 26 Maine, 561 ; *Hutchinson v. Hutchinson,* 46 Maine, 154; *Spalding v. Hallenbeck,* 30 Barb. 292; *Exum v. Canty,* 34 Miss. 533; *McGill v. Woodward,* Const. Rep. 468; *Young v. Ringo,* 1 Monroe, 243; *Lane v. Wingate,* 3 Ired. 326; *Kendall v. Kendall,* 7 Greenl. 171.

If the contract were void as claimed by the appellee's prayer granted by the court, then neither party to it can ask the interference of the court, and the appellee in this case cannot recover except by making use of the contract which he claims to be illegal, and therefore the instruction of the court was erroneous. *Simpson v. Bloss,* 7 Taunt. 246; *Albert v. Savings Bank of Baltimore,* 1 Md. Ch. 407, and 2 Md. 172; 2 E. C. L. 89, 90; *Dixon v. Olmstead,* 9 Vt. 310; *Foot v. Emmons,* 10 Vt. 338; *Howell v. Fountain,* 3 Kelly, (Ga.) 176; *Adams v. Barrett,* 5 Ga. 404; *Scott v. Duffy,* 14 Pa. St. 18.

If the appellee ever had any right of action to recover back the amount paid by him under the contract, he ought to have exercised that right before the contingency of the death of the lunatic occurred, and he ought not, in law, to be allowed to take all the benefits of the contract and then dissent from it, when and not until it became certain that no further benefit could accrue to him.

528    *William Jessop Ward,* for the appellee:

The contract in evidence in this case is condemned by the

policy of the law. *Townson v. Wilson,* 1 Camp. 396, 398; *Rex v. Martin,* 2 Camp. 268; *Watkins v. Hewlett,* 1 Brod. & Bing. 1; *Cole v. Gower,* 6 East, 116, 117; *Chappell v. Poles,* 2 M. & W. 867.

It was not competent for the appellant so to contract in the absence of special authority therefor; and its act of incorporation confers no such power. Code of Pub. Gen. Laws, Art. 44, secs. 7 and 9; *People v. Ins. Co.* 15 John. 383; Angell & Ames on Corporations, secs. 256, 271.

This is an eleemosynary corporation, and of very limited power. Angell & Ames on Corporations, sec. 39; 3 Bland, 417.

The appellee ought to recover *ex æquo et bono* from the appellant the sum paid the latter, less the amount properly chargeable as a fair and reasonable allowance for the interval between the 30th of June, 1863, and the 12th of August, 1864; upon which deduction the jury passed in rendering the verdict. *Curtis v. Leavitt,* 15 N. Y. 9, 283.

Bartol, C. J., delivered the opinion of the court.

This suit was instituted by the appellee to recover money paid by him upon a contract alleged to be illegal and void. At the first argument, heard near the close of the last term, the validity of the contract, evidenced by the receipt dated the 17th of April, 1863, was assailed chiefly on the ground that it was condemned by public policy, and was, therefore, illegal and void. The contract having been executed, and there being no evidence whatever of any duress, hardship or oppression practiced upon the party complaining, there seemed to be great force in the objection that the plaintiff came too late to have the contract set aside, and that the principle, *in pari delicto,* ought to be applied. The judges who heard the argument not being entirely agreed, and the questions, as here presented, being somewhat novel, it was considered most consonant with the ends of justice to direct *a re-argument, to allow time **529** for a fuller examination, and afford an opportunity for consulting the other members of the bench who did not sit at the oral argument. We must express to the counsel on both sides our thanks for the very full and satisfactory manner in which they have discussed the questions in their notes of argument.

These have been carefully considered, and we now proceed to state the grounds upon which we have come to the conclusion that the judgment of the Superior Court ought to be affirmed. The contract upon which the money was paid by the appellee having been made by a corporation, the question lying at the basis of the whole case is, whether the corporation possessed ·the power to make. such a contract. This depends upon the true construction of Art. 44, of the Code by which its powers are conferred and defined. The only sections bearing upon the question before us are the 7th and 9th. Sec. 7 provides that the President and Visitors " may make, ordain, alter, amend and abolish all by-laws, rules and regulations for the administration ·and government of the hospital as they may deem beneficial and advantageous." Sec. 9 provides that " they, or any number of them, not less than seven, shall have power to prescribe such rules and regulations as they may deem necessary for the management, government and regulation of said hospital, and for the admission and discharge of persons therein or therefrom, which rules and regulations shall be binding on all persons whatsoever." In our opinion, these sections cannot be properly construed to confer on the appellants the power to make the contract in question. They obviously refer first to the internal police and management of the hospital, and confer power to make rules for its regulation and government; and, secondly, to make rules for the reception and discharge of patients, and as incidental thereto, the power to fix the terms or rate of compensation to be paid for the nursing, attendance and care of patients. The contract before us was not made under, or in conformity with, any such rule or regulation.

**530** *It was in the nature of a life insurance, or a lottery, or a wager contract, depending upon the duration of the life of the patient, without regard to the duration of her unfortunate malady, and made the loss or profit of the appellants depend upon the life or death of the patient. The power to prescribe rules fixing the rate of compensation for the care of insane patients, cannot, we think, be construed into a power to make a speculative contract of that kind.

No principle is better established than that which limits corporations to the exercise of such powers only as are expressly granted by law, and such as are necessary and usual in the

course of their business, to enable them to attain the purposes of their creation. No express power to make the contract before us was conferred upon the appellants, nor was it either usual or necessary in the course of their business. The proof shows that it was unusual; no such contract had ever before been made by them, and, in order to fix upon its terms, they found it necessary to resort to the tables of life insurance companies, compiled from calculations of the probable duration of human life. The power to enter into contracts of that nature cannot be inferred from the terms of the charter.

The President and Visitors of the Maryland Hospital are a corporation established for the purpose of receiving insane patients, an unfortunate class of persons most helpless and dependent upon the care and protection of those who have them in charge. The object of the law in establishing the institution was to provide for its inmates such attention and treatment as will secure their comfort and promote their cure. It was not designed that the appellants should speculate upon the life or death of the patient, or enter into a contract by which it might become the interest of the corporation to shorten the life or protract the cure of the patient. It seems to us that it would be contrary to public policy to confer such a power, and, in the absence of express legislative grant, its existence will not be inferred. In the opinion of this court, *the appellants **531** had not the power, under their charter, to enter into the contract of the 17th of April, 1863; it was made *ultra vires;* was not binding upon them, and could not have been enforced in favor of the appellee. Is he entitled to recover back the money paid under it, or does the principle *in pari delicto* apply?

If a contract be illegal in itself, or is in violation of some statute, or against public morals, courts of justice will not aid to enforce it, for the court will not contribute the means of infringing the law. *Merrick v. Trustees, etc.,* 8 Gill, 72; *Bayne v. Suit,* 1 Md. 86. Such a contract, while it remains executory, may, in some cases, be disaffirmed by either party, and the money paid upon it recovered back. But, after it has been executed, if it appear that the parties stand strictly *in pari delicto,* it is too late for either to disaffirm or rescind it, and the parties are left without remedy against each other. 1 Story's

Eq. Jur. sec. 298; 2 Parsons on Contracts, 252, 253; *Sedwick v. Sedwick,* 6 Gill, 39.

These principles are well settled, and apply where the contract is in violation of some positive law, or involves moral turpitude; the contract made between the appellants and the appellee is not one of that kind; it was neither *malum in se* nor *malum prohibitum;* the parties, therefore, cannot be said to be *in pari delicto,* for, in the proper sense of the word, there is no *delictum.* Here the objection, which is fatal to the validity of the contract is, that the power to make it was not conferred upon the corporation by its charter, either expressly or by implication. It was simply *ultra vires,* and therefore, not binding upon the parties.

To such a contract the principle *in pari delicto* does not apply; but if the party dealing with the corporation has paid money upon it, he is entitled to recover it back. This point was very fully considered and discussed by the Supreme Court of New York in *Tracy v. Talmage,* 14 N. Y. 162, and in *Curtis v. Leavitt,* 15 N. Y. 1.

**532**    *In the able and elaborate opinions of Judges Selden and Comstock in the former, and in the latter of Comstock, Selden and Paige, Justices, many authorities are collected and reviewed, and the doctrine is asserted, that if a party makes a contract with a corporation, which is simply beyond the powers of the latter, he may recover back the money paid thereon, whether the contract be executed or executory. " The contract in all such cases will be regarded as void, and the party who delivered the property or advanced the money to such corporation will be entitled to his legal remedy, not founded upon, but in repudiation of the contract to recover the property or the money from the corporation, upon the principle that it had acquired no right or title to either under the contract." *Curtis v. Leavitt,* 15 N. Y. 239.

We consider this rule as consonant with reason and sound public policy, and supported by the weight of adjudged cases. This will abundantly appear by reference to the authorities cited in the opinions of the Judges, in *Tracy v. Talmage* and *Curtis v. Leavitt* before referred to. We are, therefore, of opinion that, upon the finding by the jury of the facts stated in the prayer of the plaintiff below, he was entitled to their verdict.

By that prayer, the jury were instructed that the plaintiff was entitled to recover the sum of $1,200 which had been paid by him under the contract, " less the amount properly chargeable as a fair and reasonable allowance to the defendants for the care and keeping of the lunatic during the period which intervened between the 30th of June, 1863, and the 12th of August, 1864, the date of the lunatic's death." This being, in its nature, an equitable action, the measure of the plaintiff's recovery must be determined upon equitable principles, the deduction or abatement was, therefore, properly allowed.

Finding no error in the ruling of the Superior Court upon the prayers, the judgment must be affirmed.

*Judgment affirmed.*

---

\*RICHARD S. HARDESTY *v.* JAMES MASON **533**
CAMPBELL, Administrator of Margaret Moore,
and Garnishee of David Moore.

*Decided December 16th, 1868.*

Attachment ; administrator the garnishee ; liability for funds since received.

The fact that a garnishee is an administrator, is not a sufficient reason for quashing the attachment.  (*a*)                    pp. 537-538

Unlike the ordinary process for the recovery of debts, the right of a plaintiff in an attachment, to a judgment of condemnation, does not depend upon whether there were funds or credits in the hands of the garnishee at the time of issuing or of serving the writ, but whether such funds or credits may have since come to his hands, or may be in his hands at the time of trial or judgment.  (*b*)                    p. 538

Appeal from the Superior Court of Baltimore City.

This was an attachment issued on the 12th of October, 1866, on a judgment recovered by the appellant against David Moore, and laid in the hands of James Mason Campbell, as Administrator of Margaret Moore, deceased. The garnishee appeared,

---

(*a*)   See *Bentley v. Shrieve,* 4 Md. Ch. 320, note (*a*).
(*b*)   See *Earle v. Dorsett,* 45 Md. 467; *Nicholson v. Crook,* 56 Md. 55.