ANTHONY MONTAGNA ET UX. *v.* EVERETTE DALE MARSTON ET AL.

[No. 374, September Term, 1974.]

*Decided January 16, 1975.*

The cause was argued before MORTON, DAVIDSON and LOWE, JJ.

*Stanley H. Miller* for appellants.

*Robert P. Slaby* for appellees.

LOWE, J., delivered the opinion of the Court.

This appeal was taken from the judgment of the Circuit Court for Howard County in equity, which denied the specific performance of a contract for the sale of land. The appellants, Anthony and Christine Montagna, residents of Connecticut, became interested in several lots situate in a proposed subdivision in Howard County which had been platted but not yet recorded nor approved by the Health Department. Through Mr. Montagna's brother, Albert Montagna, a resident of Maryland, appellants negotiated an agreement to purchase two lots from the appellees. The agreement of sale described the lots "tentatively identified as Lots Twenty-Eight and Twenty-Nine (28 and 29), Block A, Section One, as shown on the attached plat." The agreement acknowledged a deposit of $200.00 on the agreed purchase price of $10,700.00 and provided that the balance of

$10,500.00 was to be paid at the time of settlement "which will be within thirty to ninety days from the date of acceptance." The contract was dated October 14, 1970. The agreement's further provisions are at the heart of this controversy:

"This Agreement of Sale is subject to lot being approved for recordation by the Howard County authorities. Furthermore, this is subject to satisfactory percolation as required by the Howard County Board of Health. If lot described does not percolate as required by the Howard County Board of Health, Buyers have the option of selecting another lot of comparable value, which does percolate as required by the Howard County Board of Health, which has not been purchased by another party. Sale is subject to the lot being released from the mortgage by the mortgage holder. Should the grade from the road frontage be excessive, the purchaser has the option of selecting another lot with the above restrictions."

Time was declared to be of the essence in the contract. Appellants were then aware of the fact that the subdivision roads had not been constructed nor the plat recorded at the time they signed the agreement.

No demands for settlement were made by either party for nearly two years. However, an attorney for the appellees wrote appellants on August 24, 1972. The letter in pertinent part advised them:

"that the sellers consider the contract null and void because settlement has not taken place within the prescribed period of time (30-90 days from contract date). The sellers have not been successful in having the lots approved for recordation due to the stringent requirements and inspections imposed by the Howard County authorities.

A check in the amount of $200.00, your full deposit, is being returned herewith."

When appellants received this letter they wrote the attorney that they had a valid contract and returned to him the deposit which he had attempted to refund. Again they did not tender the balance of the purchase price, submit a deed for execution nor otherwise demand settlement.

Albert Montagna testified that after the agreement was executed, he saw appellee Douglas from time to time and Mr. Douglas told him that he was having problems with the County authorities. Mr. Douglas amplified this statement in his testimony indicating that some of the lots failed percolation tests and had to be realigned. The lots here considered were not, however, affected. He also testified to having had trouble securing approval from the County for the recordation of the subdivision plat.

In December of 1972 a plat of that portion of the proposed subdivision including the lots in question was approved, which fact came to appellants' attention through Albert Montagna sometime early in February, 1973. He wrote appellee Douglas in the latter part of that month which was precipitously followed by his suit for specific performance, filed on February 28, 1973.

The appellees raised a number of defenses: that the plaintiffs had not tendered the balance of the purchase price within the time specified in the agreement; that the agreement was too indefinite to be specifically enforced; that the plaintiffs had delayed for an unreasonable length of time in bringing their suit; and that specific enforcement of the contract would be inequitable since the lots had greatly increased in value between the time settlement was provided for in the agreement and the time the suit was brought.

In addition to these defenses, they protested that the agreement was in violation of a provision of the Howard County Code which imposes a penalty for selling or agreeing to sell land within a subdivision before the plat has been approved by the Planning Commission of the County.

"*Whoever*, being the owner or agent of the owner of any land located within a subdivision, *transfers* or *sells* or *leases* or *agrees to sell or negotiates to sell*

*any land* by reference to, or exhibition of, a plat or by any other means *and every* bargainee or *transferee* and the agent of such bargainee or transferee *who shall accept or knowingly be a party to any such transfer,* lease or sale *before a plat has been approved* by the Office of Planning and Zoning and recorded, or filed, in the office of the Clerk of the Circuit Court for Howard County, or the minimum requirements of the Subdivision Regulations have been relaxed by the Office of Planning and Zoning, *shall each* forfeit and *pay a penalty of Five Hundred Dollars ($500.00) for each lot* or parcel *so transferred,* leased, or sold, or agreed, *or negotiated to be sold;* and the description of a lot or parcel by metes and bounds in the instrument of transfer or other document used in the process of selling or transferring shall not exempt the transaction from such penalties or from the remedies herein provided. The County Executive may enjoin such transfer or lease or sale or agreement by action for injunction brought in any court of equity jurisdiction or may recover the said penalty by civil action in any court of competent jurisdiction, or both. In addition to the foregoing the County Executive may institute and maintain a civil action to set aside and invalidate any conveyance made in violation of this section."

Howard County Code, 1972 Ed., § 16.105 [Emphasis added].

The chancellor denied the specific performance because the agreement violated this statute and was thus, in his opinion, illegal and against public policy. He quoted *Maryland Hospital v. Foreman,* 29 Md. 524, 531 as authority for the unenforceability of such contracts.

"If a contract be illegal in itself, or is in violation of some statute, or against public morals, Courts of justice will not aid to enforce it, for the Court will not contribute the means of infringing the law. . . .

> Such a contract, while it remains executory, may, in some cases, be disaffirmed by either party, and the money paid upon it recovered back . . . ."

Recognizing *Foreman* espoused that concept over a century ago,[1] the chancellor reinforced its application by quoting from the more recent *Patton v. Graves*, 244 Md. 528, 532:

> "It is settled that where the contract which the plaintiff seeks to enforce is expressly or by implication forbidden by the statute, no Court will lend its assistance to give it effect. *Goldsmith v. Mfgr's. Liability I. Co.*, 132 Md. 283, 286, 103 Atl. 627 (1918); 17 C.J.S. *Contracts*, § 201." *See also, Thorpe v. Carte*, 252 Md. 523.

There have, however, been exceptions appended to the maxim which the chancellor did not consider. The flexibility of the doctrine was explained two years after the *Foreman* opinion espoused it. In *Lester v. Howard Bank*, 33 Md. 558, 562, the court wrote:

> "The rule of law is well settled that no action will lie to enforce a contract *malum in se*, nor if executed, to recover money paid under it. In all such cases, the maxims '*ex turpi causa non oritur actio*' and '*in pari delicto potior est conditio defendentis et possidentis*' apply.
>
> In regard to contracts not *immoral*, or *criminal* in themselves, but prohibited by statutory law, the same general rule may be said to apply, not however universal in its application, but subject to certain exceptions as binding in authority as the rule itself. Public policy, it must be borne in mind, lies at the basis of the law in regard to illegal contracts, and the rule is adopted not for the benefit of parties but of the public. It is evident,

---

1. The general concept that a contract which is violative of law is invalid had its antecedents even before Foreman applied it in 1868. *E.g.*, Hall v. Mullin, 5 H. & J. 190 (1821); Merrick v. Trustees, 8 Gill 72 (1849); Bayne v. Suit, 1 Md. 80, (1851).

> therefore, that cases may arise even under contracts of this character, in which the public interests will be better promoted by granting than by denying relief, and in such the general rule must yield to this policy. Hence Judge Story admits that even between parties 'in pari delicto' relief will sometimes be granted if public policy demands it. 1 *Story's Equity Jur.*, secs. 298-300."

The Court of Appeals then quoted the Supreme Court prescribing as a precondition to the general rule nullifying a contract, that the statute itself be analyzed and interpreted to determine whether or not the Legislature intended that contracts in contravention of the statute were to be nullified.

> "And accordingly in *Harris vs. Runnels*, 12 *Howard*, 80, the Supreme Court, whilst acknowledging as a general rule, that contracts made in contravention of statutory law are void, admit that the rule is subject to many exceptions, made upon distinctions very difficult to be understood consistently with the rule, 'so much so,' say the Court, 'that we have concluded before the rule can be applied in any case of a statute prohibiting or enjoining things to be done, with a prohibition and a penalty only for doing a thing which it forbids, that the statute must be examined as a whole to find out whether or not the makers of it meant that a contract in contravention of it should be void, or that it was not so to be. In other words whatever may be the structure of the statute in respect to prohibition and penalty, or penalty alone, that it is not to be taken as granted that the Legislature meant that contracts in contravention of it were to be void, in the sense that they were not to be enforced in a Court of justice. In this way the principle of the rule is admitted without at all lessening its force, though its absolute and unconditional application to every case is denied.' The Court further add, 'That when the statute is

silent and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void.'" *Lester v. Howard Bank*, 33 Md. at 564-565.

From such an analysis we think the words of the statute clearly indicate that the Legislature did not intend to invalidate such contracts by the enactment of the statute, otherwise the discretionary authority of the County Executive to "enjoin" such sales or to "set aside and invalidate any conveyance" by maintaining a civil suit would be without meaning. In interpreting legislation we should so read the act as to give purpose to every part thereof. *Dept. Motor Vehicles v. Greyhound*, 247 Md. 662, 668-669.

Beyond that, we note that the Legislature has distinguished between sellers and buyers in the ordinance's delineation of culpable acts. As to the seller, there is no "knowingly" provision and he is liable at every stage of the transaction, even if he merely "negotiates to sell." The buyer, however, does not violate the act unless he either 1) "accept[s] . . . such transfer, lease or sale . . ." [prior to recordation, etc.] or 2) he "knowingly [is] a party to any such transfer, lease or sale."

In light of the discretion afforded for enjoining or invalidating violative contracts, coupled with the distinction made between a seller and a buyer, we conclude that the Legislature did not consider such contracts in their executory stage *malum in se* but rather *malum prohibitum*. We further conclude that because of the seller-buyer distinction legislatively recognized, the parties to the contract were not in *pari delicto*. We are constrained to note that the chancellor seemed in accord when he returned to appellants their $200 deposit. Had he found the parties in *pari delicto*, that money being a partial execution of the contract (which he presumed illegal) could not have been recovered. *Lester, supra; Gotwalt v. Neal*, 25 Md. 434; *Tuck v. Bowie*, 1 Md. 87.

The contract was not void per se as against public policy. As the Court of Appeals has cautioned:

" . . . the right of parties to contract as they please is restricted only by a few well defined and well settled rules, and it must be a very plain case to justify a Court in holding a contract to be against public policy." *Trust Estate of Woods, Weeks & Co.,* 52 Md. 520, 538.

In conclusion we are inclined to tighten the lid with a final nail. One basic exception to the illegality rule is treated by the Court of Appeals in *McNally v. Moser,* 210 Md. 127 and is succinctly stated on page 138:

"One may not rely on illegality or invalidity where the doing of that said to be forbidden may reasonably be made legal and possible through administrative or judicial action."

Here, not only *could* the impediment have been made legal through administrative action, it actually was accomplished before suit was filed. The record clearly shows that the plat had been approved, and recorded or filed as required.

We note that the lower court expressly declined to decide the questions interposed by appellees which included laches, tender and specificity of contract. As a consequence of the chancellor's failure to decide them, we are proscribed by Md. Rule 1085 from considering them on appeal. We see nothing to be gained, however, from a retrial. Consequently we remand the case pursuant to Md. Rule 1071 for the chancellor's determination of those questions he did not reach. In making that determination, the chancellor may compel such assistance from the parties by brief, argument or otherwise as he may require for a proper consideration of the pending questions, and if he deems it necessary or advisable, he may call for additional evidence.

> *Case remanded pursuant to Md. Rule 1071.*
> *Costs to abide the result.*